DECISION AND JUDGMENT ENTRY
{¶ 1} The Gallipolis Municipal Court found Derrick J. Ward guilty of domestic violence, a violation of R.C. 2919.25. Ward appeals, and asserts that the trial court erred when it denied his motion for reconsideration and his motion for a new trial. Because Ward's conviction is supported by the sufficiency and the manifest weight of the evidence, and because Ward did not produce any affidavits to support his motion for a new trial, we disagree. Ward also asserts that the trial court failed to provide an adequate recording of the proceedings and properly preserve his exhibits. Because Ward did not file a statement of the evidence and proceedings in accordance with App.R. 9(C), we disagree. Finally, Ward asserts that the trial court erred when it permitted the State to impeach its own witness with her prior written statement. Because the record supports a finding that the State was surprised and affirmatively damaged by the trial testimony that directly contradicted the witness' statements to police, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} The State charged Ward with two separate counts of domestic violence and three separate counts of violating a protection order, all relating to Jeannette Thompson, his former girlfriend and the mother of his one-year old daughter. The trial court consolidated the five cases for trial.
 {¶ 3} One of the domestic violence charges arose from an incident that occurred at Ward's house. Thompson drove to Ward's home with two or three of her children and a fifteen year-old girl, Katrina Toles, in the car. Thompson allegedly went to the house to recover some jewelry that she believed Ward stole from her. Ward called the police. The police and Thompson started to leave Ward's house at approximately the same time. Officer Lee Walls pulled around the corner to turn around, while Officer Frank Nance pulled away and went down the road. By the time Officer Walls turned around, Thompson was flagging him down. Thompson told Officer Walls that after he and Officer Nance left, Ward got out a gun and began shooting at her car as she backed out of the driveway. Officer Walls took statements from the witnesses and arrested Ward.
 ¶ 4At the bench trial, Katrina Toles testified regarding the shooting incident. Toles had given Officer Walls a written statement in which she stated that she observed Ward shoot at Thompson's car with a long black gun with a scope on it. At trial, Toles testified that she saw Ward exit his home as Thompson pulled out of the driveway, but that she did not see anything in Ward's hands. She stated that she ducked beneath the dashboard to tie her shoe after she saw Ward come out of the house. Toles further testified that she noticed two holes in the windshield after they left Ward's house, and she recalled that the holes were not in the windshield before they arrived at Ward's house.
 {¶ 5} Over Ward's objection, the trial court permitted the State to ask Toles to review her written statement to refresh her recollection. Also over Ward's objections, the State asked Toles to read her statement for the record and inquired about the variation between her written statement and her testimony. Toles testified that she merely wrote what other people told her to write, and that she never actually saw a gun in Ward's hands.
 {¶ 6} Thompson's eleven-year old daughter, Iesha, testified that she was in the car with Thompson and Toles when she saw Ward exit his house with a gun. Iesha described the gun as a big gun with a scope on it, and stated that she was sure she saw the scope. She heard two shots, and saw two holes in the windshield that were not there before the incident.
 {¶ 7} Officer Lee Walls testified that he did not tell Toles what to write in her statement and did not observe anyone else tell Toles what to write. He further testified that Thompson's windshield did not have holes in it before he left Ward's house the first time, and that it had the holes two minutes later when Thompson flagged him down. Ward gave the police permission to search his home. Officer Walls admitted that they were unable to find a gun matching the description given by Toles and Iesha. Police did, however, find a brown BB gun, a rifle, without a scope.
 {¶ 8} On January 6, 2003, the trial court found Ward guilty of the domestic violence incident involving the BB gun shots to the windshield. The trial court granted Ward's motion to dismiss the protection order violations, and found him not guilty on the remaining domestic violence charge. Ward filed a motion for reconsideration on January 7, 2003 and a motion for a new trial on January 24, 2003. In his motion for a new trial, Ward alleged irregularity in the proceedings in that his exhibits were not properly preserved, and alleged that newly discovered evidence entitled him to a new trial. The trial court held a hearing on the motions and denied them. The court then sentenced Ward to six months in jail and one year of probation, but suspended all but ten days of the jail sentence. Finally, the court ordered Ward to repair the windshield.
 {¶ 9} Ward appeals, asserting the following assignments of error: "I. The trial court committed reversible error when it failed to grant defendant/appellant, Ward's motion for reconsideration filed on January 7, 2003, and motion for a new trial filed on January 24, 2003. II. The trial court erred when it failed to provide an adequate recording of the proceeding, as well as failing to properly preserve appellant's exhibits. III. The trial court committed prejudicial error when it allowed the State of Ohio to impeach the testimony of its own witness Katrina Toles."
 II. {¶ 10} In his first assignment of error, Ward asserts that the trial court erred when it failed to grant his motion for reconsideration and his motion for a new trial. The State urges us to affirm the judgment of the trial court on the grounds that Ward did not file the motion within the time frame permitted by "Rule 59(B)." We presume the State intended to cite Crim.R. 33(B). Crim.R. 59(B) does not relate to time for filing motions. Civ.R. 59(B) relates to time for filing motions for a new trial, but does not apply to criminal matters and does not pertain to motions for reconsideration. Crim.R. 33(B) relates to motions for a new trial in criminal matters, but not to motions for reconsideration.
 A. {¶ 11} While motions for reconsideration are not expressly or impliedly allowed in the trial court after a final judgment, interlocutory orders are subject to motions for reconsideration. Pittsv. Ohio Dept. of Transp. (1981), 67 Ohio St.2d 378, 379. Prior to the final sentencing determination, a guilty verdict is not a final order. Accordingly, the trial court was permitted to reconsider its verdict. SeeState v. Abboud, Cuyahoga App. Nos. 80318 80325, 2002-Ohio-4437, at ¶ 8.
 {¶ 12} In his motion for reconsideration, Ward names several witnesses who testified in the custody proceeding between Ward and Thompson. Ward's counsel states that he did not subpoena these witnesses for Ward's criminal trial because he believed that the same judge would preside over both matters. Ward contends that these witnesses, including several police officers, testified favorably to him. However, while Ward's characterization of the testimony may be accurate, it is axiomatic that a trial court may not consider knowledge gained from outside of the proceedings. Thus, even if the same trial judge had presided over both proceedings, the court could not have properly considered testimony that it heard in the juvenile proceeding. Moreover, Ward did not seek a continuance in order to subpoena the witnesses or seek to offer a transcript of their testimony to the court.
 {¶ 13} Ward also asserts that the testimony of Officer Walls, Iesha, and Thompson is not credible, and thereby argues that his conviction is contrary to the sufficiency and the manifest weight of the evidence. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979),443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982),70 Ohio St.2d 79, 79-80; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 14} Here, the trial court found that the testimony of Officer Walls was credible. Specifically, the trial court found that the officer's testimony, that the holes in the windshield appeared during an approximately two minute time period, constituted credible, independent corroboration of Thompson's claim that Ward shot at her. We find that this constitutes some competent, credible evidence upon which the trial court could base its decision, and therefore we find that sufficient evidence supports Ward's conviction.
 {¶ 15} Even when a verdict is supported by sufficient evidence, an appellate court may nevertheless conclude that the verdict is against the manifest weight of the evidence because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks (1992), 78 Ohio App.3d 206, 214; State v.Martin (1983), 20 Ohio App.3d 172, 175. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted.State v. Garrow (1995), 103 Ohio App.3d 368, 370-71; Martin,20 Ohio App.3d at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 16} Here, the record contains substantial evidence upon which the court could reasonably conclude beyond a reasonable doubt that Ward shot a BB gun toward Thompson's car while Thompson was inside. Specifically, the testimony of Officer Walls constitutes that the holes in the windshield appeared during a brief window of time during which Thompson was in Ward's driveway, and officers discovered a long brown BB gun at Ward's home. Based upon these facts, we cannot say that the trier of fact lost its way or that a manifest injustice occurred. Therefore, we find that Ward's conviction is not contrary to the manifest weight of the evidence.
 {¶ 17} Finally, Ward argues in his motion for reconsideration that domestic violence prosecutions are "completely out of control in Gallia County, Ohio, because of grant money," and that Toles is the daughter of both the perpetrator and the victim of "the second worst domestic violence [incident] in Gallia County, Ohio, in the past ten years," and that Toles is in the perpetrator's custody. To the extent that these matters have any bearing upon Ward's conviction, they rely upon evidence outside the record, and therefore they are not appropriate for direct appellate review.
 {¶ 18} Accordingly, we find that the trial court did not err in denying Ward's motion for reconsideration.
 B. {¶ 19} Pursuant to Crim.R.33(B), a motion for a new trial must be filed within fourteen days after the verdict if the motion is based upon grounds of: (1) irregularity in the proceedings; (2) misconduct of the jury, prosecuting attorney, or witnesses for the state; (3) accident or surprise which ordinary prudence could not have guarded against; (4) insufficient evidence; or (5) error of law occurring at trial. The court does not possess authority to extend this time limit. Crim.R. 45(B);State v. Roberts (2001), 141 Ohio App.3d 578. In his motion, Ward alleged that the trial court should have granted him a new trial in part because irregularities occurred in the proceedings, an accident or surprise occurred, and the verdict is not sustained by sufficient evidence. To the extent that Ward based his motion on these grounds, the motion was untimely, and the trial court erred in considering it, because he filed the motion more than fourteen days after the verdict.
 {¶ 20} The trial court may also grant a new trial "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the time of trial." Crim.R. 33(A)(6). Motions for a new trial on account of newly discovered evidence may be filed within one hundred twenty days of the verdict. Crim.R. 33(B). When a defendant moves for a new trial on the grounds of newly discovered evidence, "the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case." Crim.R. 33(A)(6). The trial court's decision on a motion for new trial will not be disturbed on appeal absent an abuse of discretion. State v. Brumback
(1996), 109 Ohio App.3d 65.
 {¶ 21} In his motion for a new trial, Ward alleged that he found newly discovered evidence, namely that: (1) the holes in Thompson's windshield had to be the result of at least two separate projectiles, since a BB gun is not automatic; (2) the gun allegedly used, a black gun with a scope, was never recovered; (3) Officer Walls'[1] statement that the holes were not in the windshield until after the incident was not based upon personal knowledge; and (4) the holes were caused by gravel. It is not clear that Ward, with reasonable diligence, could not have discovered and produced this evidence at trial. In fact, at trial Ward presented evidence that the gun was never recovered. Moreover, when the trial court held a hearing on the motion on January 27, 2003, Ward did not produce any affidavits to prove his allegations. Nor did Ward request that the court grant him more time to procure such affidavits. Thus, Ward did not comply with the requirements of Crim.R. 33(A)(6). Therefore, we find that the trial court did not abuse its discretion in denying Ward's motion for a new trial.
 {¶ 22} Because the trial court did not abuse its discretion in denying Ward's motion for reconsideration or his motion for a new trial, we overrule his first assignment of error.
 III. {¶ 23} In his second assignment of error, Ward first contends that the trial court erred when it failed to properly preserve his exhibits. However, Ward does not specifically identify the contents of the missing exhibits or their relevance to his defense. Instead, Ward merely states that he introduced, by stipulation, "various sheriff's reports and incident reports" that were copies of exhibits used in the child custody case between Ward and Thompson in the Gallia County Juvenile Court. Ward does not identify where in the record he introduced these exhibits. Ward further contends that the exhibits "should have" been introduced by the prosecution, but were not admitted into evidence because the information contained in them was favorable to Ward. Finally, Ward contends that a two-minute "skip" in the recording equipment caused him prejudicial harm, leaving this court unable to review the trial court's ruling on the admissibility of his exhibits and reasoning for finding Ward guilty.
 {¶ 24} The record reflects that Ward attempted to introduce five exhibits. The trial court sustained the State's relevancy objection to Ward's exhibit A, a copy of a complaint filed in the custody action between Ward and Thompson regarding their daughter. The document is nonetheless contained in the record, because Ward attached it to his motion for reconsideration. The trial court took judicial notice of Ward's exhibits B and C, the complaints regarding two of the criminal charges before the court, the domestic violence charge involving the BB gun and a protection order violation involving a telephone call from Ward to Thompson. Thus, Ward's exhibit B is part of the record, and the trial court heard extensive evidence regarding the content of exhibit C, ultimately sustaining Ward's motion to dismiss the complaint regarding the telephone call.
 {¶ 25} The trial court noted, and Ward conceded, that Ward failed to introduce testimony properly identifying Ward's exhibits I and K, photographs of Ward with Thompson's children that were taken approximately two weeks prior to trial. The trial court stated that Ward had accomplished his motive for introducing the photos, because the court believed his assertion that the children, contrary to Thompson's testimony, are not afraid of Ward. Ward agreed with the court and did not attempt to introduce testimony identifying the photos.
 {¶ 26} It is not clear if Ward believes the exhibits listed above were not "properly preserved," or if there are others that he believes are missing from the record. Ward does not cite any authority for his contention that the prosecution "should have" introduced certain unidentified exhibits, and we are not aware of any law requiring a party to do so. Ward could have sought to introduce any exhibits which felt were favorable to him, and his failure to do so constitutes a waiver of any error due to their omission from the record. See Van Camp v. Riley
(1984), 16 Ohio App.3d 457, 463. Ward has not identified any place in the record during which the court was still receiving evidence and these mystery exhibits were proffered. As for Ward's implication that the trial court discussed the admissibility of these exhibits during the two minute skip in the transcript, we note that the skip occurred after closing arguments, and thus after both parties rested their presentations of evidence.
 {¶ 27} Ward also contends that the trial court erred when it failed to provide an adequate record of the proceedings. Specifically, Ward asserts that the two minute skip in the recording of the trial judge's statement caused him prejudicial error. At page 129, the transcript attributes the following statement to the court: "* * * the evidence, I believe beyond a reasonable doubt, proves that that window, that that windshield damaged by what appeared to be a. . . ." The transcript then contains the following: "COURT REPORTER NOTE: The recording skipped forward approximately two minutes resulting in the loss of the Judge's statement."
 {¶ 28} Unfortunately, recording equipment occasionally malfunctions. The failure of recording equipment in the trial court does not result in prejudice per se. State v. Skaggs (1978), 53 Ohio St.2d 162, syllabus. The Appellate Rules provide a remedy that preserves the right to full review in such situations. Specifically, App.R. 9(C) provides "* * * if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." When all or part of the transcript of a trial court proceeding is unavailable due to malfunctioning recording equipment, the appellant bears the burden of attempting to reconstruct the record with a narrative prepared pursuant to App.R. 9(C) if the appellant intends to rely upon the missing portions of the transcript in his assignment of error. State v. Drake (1991), 73 Ohio App.3d 640, 647;Thomas v. Hedge (Feb. 6, 1987), Portage App. No. 1707. See, also, Statev. Davis (1991), 62 Ohio St.3d 326, 347; State v. Elder (1989),65 Ohio App.3d 463.
 {¶ 29} Here, Ward did not attempt to prepare a narrative of the proceedings in lieu of the transcript. Because Ward did not attempt to reconstruct the content of the missing portion of the transcript, he failed to prove that any prejudice arose. Therefore, the two minute skip in the recording of the proceedings does not require reversal of Ward's conviction.
 {¶ 30} Accordingly, we overrule Ward's second assignment of error.
 IV. {¶ 31} In his third assignment of error, Ward contends that the trial court erred when it allowed the State to impeach its own witness, Toles, with her prior written statement to police.
 {¶ 32} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court. Berk v.Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 33} Evid.R. 607 provides that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. The existence of surprise and affirmative damage are factual issues left to the discretion of the trial court. State v. Diehl (1981),67 Ohio St.2d 389, 391. A party demonstrates "surprise" when the witness' trial testimony is materially inconsistent with the prior statement and counsel did not have reason to believe that the witness would repudiate the prior statement. State v. Holmes (1987), 30 Ohio St.3d 20, 23; see, also, State v. Davie (1997), 80 Ohio St.3d 311, 323. Finally, a party demonstrates "affirmative damage" when the witness testifies at trial to facts which contradict, deny or otherwise harm that party's trial position. State v. Blair (1986), 34 Ohio App.3d 6, 9; State v. Stearns
(1982), 7 Ohio App.3d 11, 15.
 {¶ 34} Here, Ward alleges that the State was not surprised by Toles' testimony, because Toles "had always maintained that she had not seen [Ward] with a gun." However, the fact that Toles' testimony was completely contrary to her prior statement to police constitutes evidence that the State was surprised by Toles' testimony. Holmes, supra. The record does not contain any indication that the State had reason to believe that Toles would testify contrary to her written statement. Additionally, Toles' testimony affirmatively damaged the State's case because she was the only eyewitness to the shooting who is not related to one of the parties.
 {¶ 35} After reviewing the record, we find that the evidence supports a finding that the State was both surprised and affirmatively damaged by Toles' testimony. Therefore, we hold the trial court did not abuse its discretion by allowing the State to impeach Toles with her written statement. Accordingly, we overrule Ward's third assignment of error, and we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J. and Abele, J.: Concur in Judgment and Opinion.
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] In the briefs, arguments, and decisions, the trial court, Ward, and the State all refer to the officer who observed the holes in the windshield as Sgt. Patterson. However, the transcript reveals that Sgt. Patterson only testified regarding one of the restraining order violations, and that Officer Walls testified regarding the BB gun incident.