Judgment reversed.

PIETRYKOWSKI and SINGER, JJ., concur.

---

### The STATE of Ohio, Appellee,

#### v.

### ROSS, Appellant.

[Cite as *State v. Ross*, 184 Ohio App.3d 174, 2009-Ohio-3561.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 21906.

Decided July 22, 2009.

William D. Mason, Cuyahoga County Special Prosecuting Attorney, and John R. Mitchell and Matthew E. Meyer, Assistant Prosecuting Attorneys, for appellee.

Lawrence J. Whitney, for appellant.

DICKINSON, Judge.

## INTRODUCTION

{¶ 1} It's now been over ten years since someone murdered Hanna Hill, put her partly naked body in the trunk of her car, and parked that car in an Akron neighborhood. Denny Ross was indicted and tried for aggravated murder, murder, kidnapping, rape, tampering with evidence, and abuse of a corpse. His trial ended in a mistrial and confusion. Within a week following the mistrial, he moved for, among other things, acquittal on the rape charge, arguing that the state had failed to present sufficient evidence at the trial on that charge. A

visiting judge, appointed after the original trial judge was removed, initially denied that motion. But upon reconsideration, he determined that the state had failed to present evidence at the trial that, if believed, could have convinced the jury beyond a reasonable doubt that Ross had raped Hill, and acquitted him on the rape charge and the resulting capital specification. The state has conceded that the question whether there was sufficient evidence on the rape charge presented at trial is not before us. But the issue that is before us is whether the visiting judge had authority, after having initially denied the motion for acquittal, to reconsider and grant it. We affirm, because the visiting judge's initial denial was an interlocutory order, and he had authority to reconsider and grant that motion at any time before final judgment.

## WHY WE'RE STILL TALKING ABOUT THE AFTERMATH OF THE MISTRIAL

{¶ 2} As mentioned above, Ross was tried on charges of aggravated murder, murder, kidnapping, rape, tampering with evidence, and abuse of a corpse. That trial took place during 2000. At the close of the state's case in that trial, Ross moved for acquittal on the charges against him. The trial judge granted his motion on the kidnapping charge, but denied it on the other charges. Ross did not present any evidence in defense and renewed his motion for acquittal on the remaining charges. The trial court again denied it.

{¶ 3} During jury deliberations, the jury foreperson wrote the trial judge a note expressing concerns about statements and actions of one of the jurors, including that juror's reference to a polygraph test supposedly taken by Hill's boyfriend. After considering and rejecting other ways of handling the situation, the trial judge declared a mistrial and set a date on which a retrial would begin. Following her declaration of a mistrial, the trial court learned that the jury had, before the mistrial, completed verdict forms finding Ross not guilty on the aggravated-murder, murder, and rape charges.

{¶ 4} Seven days after the trial judge journalized her declaration of a mistrial, Ross moved to bar a retrial, arguing that there had not been a manifest necessity for the mistrial. Significantly, for purposes of this appeal, at that same time, Ross renewed his motion for acquittal, arguing that the state had failed to present sufficient evidence at trial on the remaining charges against him. Ross also sought removal of the trial judge based on an argument that she would likely be called to testify about her mistrial decision.

{¶ 5} The Chief Justice granted Ross's request for removal of the trial judge and appointed a visiting judge in her place. The visiting judge eventually held an evidentiary hearing on Ross's motion to bar his retrial and granted it, holding that a retrial was barred by the constitution's protection against double jeopardy.

The state appealed that decision to this court, which reversed, and the Ohio Supreme Court refused jurisdiction over Ross's attempted appeal to that court. *State v. Ross,* 9th Dist. No. 20980, 2002-Ohio-7317, 2002 WL 31890088.

{¶ 6} With this case back in the trial court, the visiting judge, on September 10, 2003, filed an order that, among other things, denied Ross's renewed motion for acquittal. That order contained no analysis.

{¶ 7} Despite the fact that the trial court had denied his renewed motion for acquittal, Ross, on November 6, 2003, filed a brief captioned "Defendant Ross' Supplemental Memorandum in Support of Renewed Motion for Judgment of Acquittal Pursuant to Ohio Crim. Rule 29." On November 26, 2003, he filed another brief, this one captioned "Second Supplemental Memorandum in Support of Renewed Motion for Judgment of Acquittal Pursuant to Ohio Crim. Rule 29." The state filed a response to Ross's first "Supplemental Memorandum" on December 3, 2003, and a response to his "Second Supplemental Memorandum" on December 10, 2003.

{¶ 8} On December 22, 2003, the visiting judge entered an order in which he treated Ross's supplemental memoranda in support of his motion for acquittal as a motion for reconsideration of the denial of that motion. In a 13–page order that reviewed the evidence that had been presented at trial, it granted Ross's "Motion for Reconsideration for Criminal Rule 29 Acquittal as to the charge of Rape and its capital specification and deni[ed] [his] Motion for Reconsideration for a Criminal Rule 29 Acquittal as to all other charges * * *."

{¶ 9} The state sought leave to appeal the visiting judge's order acquitting Ross on the rape charge and its capital specification, and this court, on March 29, 2004, granted it leave to do so. But before we could hear argument on the state's appeal, Ross filed a petition for habeas corpus in the federal district court. This court stayed its proceedings while he pursued his federal remedies.

{¶ 10} The federal district court granted Ross's petition for habeas corpus. *Ross v. Petro* (N.D.Ohio 2005), 382 F.Supp.2d 967. On appeal, however, the United States Court of Appeals for the Sixth Circuit reversed. *Ross v. Petro* (C.A.6, 2008), 515 F.3d 653. Ross then sought certiorari, which the United States Supreme Court denied. *Ross v. Rogers* (2009), —— U.S. ——, 129 S.Ct. 906, 173 L.Ed.2d 109. This court thereupon lifted its stay and held oral argument on the state's appeal from the trial court's reconsideration of Ross's renewed motion for acquittal on the rape charge against him and the resulting capital specification.

## THE TRIAL COURT'S RECONSIDERATION OF ITS DENIAL OF ROSS'S RENEWED MOTION FOR ACQUITTAL

{¶ 11} The state's first assignment of error is that the trial court did not have authority to reconsider its denial of Ross's renewed motion for acquittal

because "a motion to reconsider is a nullity, and any order granting a motion to reconsider is a nullity." In its opening brief in this court, which was filed in March 2004, the state correctly asserted that a motion for reconsideration of a final judgment is a nullity, without presenting any analysis of whether the visiting judge's initial denial of Ross's renewed motion for acquittal was a final judgment. It did assert, at one place in its brief, that it had relied on the trial court's "journal entry as a final order denying Judgment of Acquittal." And, at another place in its brief, it directly asserted that the trial court had spoken through its journal entry, "issuing a final order denying defendant's Motion for Judgment of Acquittal." Simply asserting that the trial court's initial denial was a final order, however, does not make it one.

{¶ 12} In fact, the trial court's initial denial of Ross's renewed motion for acquittal was not a final judgment. It did not, "in effect[,] determine[ ] the action and prevent[ ] a judgment." R.C. 2505.02(B)(1). Nor did it fall within any of the other subparts of R.C. 2505.02(B). Rather, the trial court's initial denial of Ross's renewed motion for acquittal was an interlocutory order. Most of what the state said in its opening brief in support of its first assignment of error, therefore, was not helpful.

{¶ 13} Before Ross filed his brief in response to the state's opening brief, the state apparently woke up and realized that its argument in support of its first assignment of error missed the point. Accordingly, purportedly under App.R. 21(H), it filed a document captioned "Notice of Supplemental Authority," which addressed *State v. Abboud,* 8th Dist. Nos. 80318 and 80325, 2002-Ohio-4437, 2002 WL 1986552, and *State v. Ward,* 4th Dist. No. 03CA2, 2003-Ohio-5650, 2003 WL 22413424.

{¶ 14} The situation in *Abboud* was, in all material respects, identical to that in this case. A jury found the defendant guilty of coercion and kidnapping with a gun specification. Within the time following the return of a verdict allowed by Crim.R. 29(C), the defendant moved for acquittal. The trial court initially denied his motion, but later reconsidered and acquitted him on the gun specification. The state appealed and argued, just as it has in this case, that the trial court's order reconsidering its earlier denial of the defendant's motion for acquittal was "a nullity." The appellate court determined that because the trial court's initial denial was an interlocutory order, it was free to reconsider and change its mind: "While motions for reconsideration are not expressly or impliedly allowed in the trial court after a final judgment, interlocutory orders are subject to motions for reconsideration * * *. The denial of a motion for judgment of acquittal prior to final sentencing is an interlocutory order. Accordingly, the trial court was permitted to 'revisit' the order that denied [the defendant's] motion for acquittal."

*Abboud,* 2002-Ohio-4437, 2002 WL 1986552, at ¶ 8, citing *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379, 21 O.O.3d 238, 423 N.E.2d 1105.

{¶ 15} In *State v. Ward,* 4th Dist. No. 03CA2, 2003-Ohio-5650, 2003 WL 22413424, the trial court found the defendant guilty of domestic violence following a bench trial. Id. at ¶ 8. The defendant moved the court to reconsider its finding of guilt, and the trial court declined to do so. On appeal, the defendant argued that the trial court should have granted his motion for reconsideration. The state responded that the appellate court should affirm because his motion for reconsideration was not timely. In reliance upon *Abboud,* the appellate court held that the motion for reconsideration was properly before the trial court: "Prior to the final sentencing determination, a guilty verdict is not a final order. Accordingly, the trial court was permitted to reconsider its verdict." Id. at ¶ 11, citing *State v. Abboud,* 2002-Ohio-4437, 2002 WL 1986552. On the merits, the appellate court determined that the trial court had properly denied the motion for reconsideration.

{¶ 16} In its "Notice of Supplemental Authority," the state argued that this court should not follow *Abboud* because the "court's cursory analysis is flawed and does not merit reliance." It then, in a cursory manner, pointed out that the court in *Abboud* had relied upon *Pitts v. Ohio Dept. of Transp.,* 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, which was a civil case rather than a criminal case. It further pointed out that Crim.R. 29(C) provides that a motion for acquittal following a mistrial must be filed within 14 days after the jury is discharged. Neither the fact that *Pitts* is a civil case nor that a motion for acquittal must be filed 14 days after the jury is discharged addresses the question before this court, which is whether, once a trial court has denied a motion for acquittal that was properly filed within 14 days after the jury was discharged following a mistrial, the trial court has authority to reconsider that denial.

{¶ 17} The Ohio Rules of Criminal Procedure neither specifically authorize nor prohibit a trial court from reconsidering interlocutory orders, regardless of whether that reconsideration is the result of a motion or sua sponte. Crim.R. 57(B), however, authorizes trial courts to "look to the rules of civil procedure * * * if no rule of criminal procedure exists." And, as noted by the Ohio Supreme Court in *Pitts v. Ohio Dept. of Transp.,* 67 Ohio St.2d at 379, 21 O.O.3d 238, 423 N.E.2d 1105, fn. 1, Civ.R. 54(B) "allows for a reconsideration or rehearing of interlocutory orders." Accordingly, unless orders denying motions for acquittal are different from other interlocutory orders, a trial court has authority to reconsider them.

{¶ 18} As mentioned above, the state pointed out in its "Notice of Supplemental Authority" that motions for acquittal following a guilty verdict or mistrial must be filed within 14 days after the jury is discharged. That is true regardless of

whether the defendant earlier moved for acquittal at the close of the state's case or at the close of all the evidence. An interlocutory order denying a motion for acquittal at the close of the state's case or at the close of all the evidence, therefore, is different from other interlocutory orders because the trial court can't reconsider them at any time until a final judgment is entered unless the defendant renews them within 14 days after the jury is discharged. But, again, the question before this court is not whether a trial court can reconsider a motion for acquittal that it denied during trial. Rather, the question before us is whether it can reconsider its initial denial of a timely postmistrial motion for acquittal.

{¶ 19} The bulk of the state's reply to Ross's appellate brief is a discussion of *Carlisle v. United States* (1996), 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613, a case that the state had not mentioned in its opening brief and that Ross did not cite in his brief to this court. By the time of the reply brief, however, according to the state, "[b]ecause *Carlisle* controls the outcome of this case, defendant Ross' arguments against this appeal have no merit." Not surprisingly, *Carlisle* does not compel a conclusion that Ross's "arguments against this appeal have no merit." In fact, to the extent that it is relevant, it implicitly supports the trial court's ability to reconsider its initial denial of Ross's renewed motion for acquittal.

{¶ 20} *Carlisle* addressed Rule 29(c) of the Federal Rules of Criminal Procedure, which, except for providing that a motion for acquittal following a guilty verdict or mistrial must be filed within seven days instead of 14 days, is, in all material ways, identical to Rule 29(C) of the Ohio Rules of Criminal Procedure. The defendant in *Carlisle* was convicted of conspiracy to possess with intent to distribute marijuana. He moved for acquittal one day beyond the seven days permitted under Rule 29(c). The trial court initially denied his motion, but, when the defendant appeared for sentencing, reconsidered its earlier denial and acquitted him, concluding that there was insufficient evidence to prove that he had knowingly and voluntarily joined the conspiracy. The United States Court of Appeals for the Sixth Circuit reversed, and the United States Supreme Court granted certiorari.

{¶ 21} The Supreme Court affirmed the Sixth Circuit's decision. It held, among other things, that "[t]here is simply no room in the text of Rule[ ] 29 * * * for the granting of an untimely postverdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error." *Carlisle,* 517 U.S. at 421, 116 S.Ct. 1460, 134 L.Ed.2d 613. The Supreme Court also rejected the defendant's argument that Rule 29(a) provides a trial court with authority to sua sponte acquit a defendant after a guilty verdict.

{¶ 22} *Carlisle* would be persuasive authority for reversal of the trial court's action in this case if Ross had not timely renewed his motion for acquittal following the mistrial. But he did. It, therefore, does not support the state's position. In fact, if anything, it undercuts the state's argument that the visiting judge acted without authority in reconsidering his initial denial of Ross's renewed motion.

{¶ 23} As mentioned above, the trial court in *Carlisle* initially denied the defendant's late motion for acquittal and reconsidered and granted it when the defendant showed up for sentencing. Neither the majority opinion nor either concurring opinion, however, includes a suggestion that regardless of whether the trial court could have granted the defendant's postverdict motion for acquittal at the time it was filed, it was without authority to reconsider it once it had denied that motion. Admittedly, it is dangerous to read too much into things not said in United States Supreme Court decisions, but if such a suggestion were there, it would lend credence to the state's position; but it is not.

{¶ 24} The state has further argued that since Crim.R. 29(C) specifically provides that a motion for acquittal may be made or renewed within 14 days following discharge of a jury, the trial court was without authority to reconsider its initial denial of Ross's motion 1,145 days following the jury's discharge. The time limit imposed by Crim.R. 29(C), however, relates only to when the defendant must move for acquittal. It does not relate to when the trial court must rule on that motion. In fact, as pointed out by the state, because of the previous appeal in this case, the visiting judge's initial denial of Ross's renewed motion for acquittal did not come until 1,041 days after the jury was discharged. As mentioned previously, under Civ.R. 54(B), a trial court may reconsider an interlocutory order at any time before final judgment.

{¶ 25} Ross timely renewed his motion for acquittal on the rape charge within 14 days after the jury was discharged. The visiting judge's initial denial of that renewed motion was an interlocutory order, which he was free to reconsider up until entry of a final judgment. Accordingly, the trial court had authority to acquit Ross of the rape charge against him and the resulting capital specification, and the state's first assignment of error is overruled.

## THE STATE'S FRIVOLOUS SUMMARY–JUDGMENT ARGUMENT

{¶ 26} The state's second assignment of error is that the trial court erroneously granted partial summary judgment to Ross "before the information upon which it relied had been admitted." Although the state has acknowledged that the merits of the trial court's determination that Ross was entitled to acquittal on the rape charge are not before this court, by its second assignment of error, it has attempted to get us to review those merits.

{¶ 27} At the trial that ended in a mistrial, the state presented expert testimony about a supposed bite mark in the area of the underside of Hill's elbow. According to the expert, the bite mark did not match Hill's boyfriend's teeth, but Ross could not be eliminated as the "biter." In his order reconsidering and granting Ross's renewed motion for acquittal on the rape charge, the visiting judge reviewed in detail the evidence regarding the rape charge that had been presented at the trial that had ended in a mistrial. As part of his discussion of that evidence, he included a paragraph about the testimony regarding the bite mark. He then added a footnote in which he mentioned that since the time of trial, the state had hired additional experts who concluded that the mark on Hill's arm was not a bite mark. From that footnote, the state has argued that in acquitting Ross on the rape charge, the visiting judge was anticipating evidence that would be submitted at the retrial and, based on that evidence, granting him summary judgment on the rape charge.

{¶ 28} The state has argued that summary judgment is not appropriate in a criminal case. That, of course, is true. See, e.g., *State v. Barsic* (May 10, 1995), 9th Dist. No. 94CA005883, 1995 WL 283770, at *1–2. As with most of the arguments it presented in support of its first assignment of error, however, this rule of law has nothing to do with this case. The visiting judge did not anticipate what evidence the state would or would not present at Ross's retrial; it determined that the evidence that was presented at his original trial on the rape charge was insufficient.

{¶ 29} In the footnote about which the state has complained, the visiting judge wrote that the state had conceded that the "bite mark" evidence "is inaccurate." He did not conclude, however, that he should not consider it in determining whether the state had presented sufficient evidence at the original trial. As is so often true of footnotes, it was an aside. Such asides should probably not be included in opinions or briefs, but it is a bad habit that the legal profession can't seem to break.

{¶ 30} It is clear from the concluding paragraph of the visiting judge's order granting acquittal on the rape charge that his decision to do so was based on an analysis of the evidence that was presented at the original trial: "In sum, although the [victim] was horribly beaten, this Court cannot say after reviewing the transcript in its entirety that such beating was done during or after the Defendant was engaged in intercourse or penetration of the victim. Based upon this evidence, the Court finds that reasonable minds can come to but one conclusion, and that is that the State has failed to prove that the victim was subjected to unwanted sexual conduct. Therefore, the Court finds, after construing the evidence in a light most favorable to the State, that reasonable minds could not reach different conclusions as to whether each material element of rape

has been proven. Therefore, the court grants the Defendant's Motion for a Criminal Rule 29 Acquittal on the indicted offense of rape and the death specification."

{¶ 31} Even if the visiting judge had improperly excluded the "bite mark" evidence from his analysis of the evidence presented at the original trial based on the state's acknowledgment that that evidence was inaccurate, his doing so would have been a mistake on the merits of his acquittal decision. It would not have magically turned that decision into an improper summary judgment. As the state has conceded, the merits of the visiting judge's acquittal decision are not before us.

{¶ 32} The trial court's order acquitting Ross on the rape charge did not grant him partial summary judgment in a criminal case. The state's second assignment of error is overruled.

## CONCLUSION

{¶ 33} The state's assignments of error are overruled. The judgment of the trial court acquitting Ross on the rape charge and resulting death specification is affirmed.

Judgment affirmed.

MOORE, P.J., and BELFANCE, J., concur.