[Cite as *State v. Ross*, 2014-Ohio-2867.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

     Appellee

     v.

DENNY F. ROSS

     Appellant

C.A. No.     26694

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 99 05 1098(A)

DECISION AND JOURNAL ENTRY

Dated: June 30, 2014

WHITMORE, Judge.

{¶1}    Defendant-Appellant, Denny Ross, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and vacates in part.

I

{¶2}    On May 19, 1999, 18-year-old Hannah Hill had dinner at home, told her mother she was going out for a little while, and left her house shortly after 9:30 p.m. Seven days later, her body was discovered in the trunk of her car. She was naked from the waist down, and her bra was exposed. Additionally, her feet were together and her knees were bent and apart such that her genitals were on display when the police opened the trunk. The police found both Hill's pager and her car keys inside of her car.

{¶3}    Ross became a person of interest in Hill's murder after the police obtained her phone records. Officers interviewed Ross on the evening of May 26, 1999; the same day Hill's body was discovered. Ross admitted that Hill had come to his apartment on the night of May

19th and that they had "kissed and stuff like that," but he claimed that Hill had left sometime after midnight. The police executed a search warrant at Ross' apartment several hours later, during the early morning hours of May 27th. In the course of the search, the police discovered a garbage bag lying underneath one of the windows of Ross' upstairs apartment. The garbage bag contained Hill's underwear, pants, socks, shoes, and purse.

{¶4} In June 1999, a grand jury indicted Ross on the following counts: (1) aggravated murder, in violation of R.C. 2903.01(B); (2) felony murder, in violation of R.C. 2903.02(B), with kidnapping and/or rape as the predicate offense; (3) rape, in violation of R.C. 2907.02(A)(2); (4) kidnapping, in violation of R.C. 2905.01(A); (5) tampering with evidence, in violation of R.C. 2921.12(A)(1); and (6) gross abuse of a corpse, in violation of R.C. 2927.01(B). The aggravated murder count also contained two capital murder specifications due to the fact that the aggravated murder had occurred in connection with a rape and/or kidnapping.

{¶5} Before his first trial, Ross filed several motions to suppress, seeking to exclude (1) statements he made to the police while at home and at the hospital, (2) evidence taken from his home, and (3) certain eyewitness identifications. The trial court held suppression hearings on Ross' motions and denied the motions on May 10, 2000. A jury trial then ensued. At the conclusion of the State's case, the trial court granted Ross' motion for acquittal with respect to his kidnapping charge and the related capital specification. The remaining charges were then submitted to the jury. Their deliberations commenced on October 27, 2000.

{¶6} On Saturday, October 28, 2000, the trial court received a note from the jury foreman, indicating that another juror had engaged in misconduct. The note read:

> There is concern about a juror. I was approached by a spokesperson for four other jurors. From comments made by this juror these four jurors feel that he is agreeing with the group to expedite this process. I was told by these jurors that the[] following comments were made.

No. 1, we need to get this done today.

No. 2, why are we even discussing this. He has stated all along that he believes one thing but has all too quickly changed his vote to go along with the group. This morning this juror stated to me that we need to finish this today as he will be leaving after today because he has a problem at home but he did not want to put us in that position.

To another juror he made the comment that he knows that Brad O'Born[1] was innocent because he passed a polygraph test so Denny Ross had to be guilty.

I have been asked if this juror can be released so that he may attend to his affairs at home and we can have an impartial and fair jury.

The court presented the foreman's note to the attorneys and discussions were had both off and on the record. Both sides felt that it would be inappropriate to voir dire the jurors during the deliberation phase of the trial. Yet, the parties disagreed as to the appropriate remedy to apply. While the State was willing to consent to a mistrial, the defense refused. The court ultimately concluded that an incurable instance of juror corruption had occurred and that a mistrial without prejudice was warranted. The court declared the mistrial on the record outside of the presence of the jury. The trial judge then entered the jury room by herself, informed the jurors that she had declared a mistrial, and discharged them. Because several of the jurors were upset by the mistrial decision, however, she agreed to speak privately to individual jurors in chambers.

{¶7} While speaking privately to the jurors, the judge learned that the jurors had completed three verdict forms before the court had declared a mistrial. Specifically, the jurors had written "not guilty" on the aggravated murder, felony murder, and rape verdict forms and had signed the forms. The judge instructed her bailiff to collect the verdict forms from the jury room. Defense counsel did not learn about the completed verdict forms until after the jurors had left the courthouse.

---

[1] O'Born was Hill's boyfriend at the time of her murder.

{¶8} Subsequently, Ross filed several motions seeking "to perfect the three unanimous verdicts returned by the jury on October 28, 2000" and to bar a retrial based on Double Jeopardy grounds. Due to her status as a probable witness, the trial judge was disqualified and a new trial judge was assigned to the case. The court held a hearing on Ross' motions. On February 15, 2002, the court concluded that any retrial was barred, as the original trial judge had ordered a mistrial in the absence of a manifest necessity. The State then appealed that decision, and this Court reversed. This Court held that, based upon the knowledge that the original trial judge possessed at the time she ordered a mistrial, the judge did not abuse her discretion in concluding that there was a manifest necessity for a mistrial. *State v. Ross*, 9th Dist. Summit No. 20980, 2002-Ohio-7317, ¶ 27-52. We remanded the matter for retrial. *Id.* at ¶ 52.

{¶9} After this Court's remand, Ross continued to pursue his motion to perfect the verdicts as well as a Crim.R. 29(C) motion for acquittal. The trial court held a hearing on Ross' motions. Subsequently, the court denied Ross' motion to perfect the verdicts, but granted his Crim.R. 29(C) motion with respect to his rape charge and the related capital specification. The State then sought leave to appeal from the trial court's decision, and this Court allowed the appeal.

{¶10} On May 6, 2004, before this Court heard the State's appeal, Ross filed a petition for a writ of habeas corpus in federal court. Shortly thereafter, the United States District Court for the Northern District of Ohio issued an order staying the state criminal proceedings pending the resolution of Ross' habeas petition. This Court was notified of the order and agreed to stay the appeal until the federal case was decided. *State v. Ross*, 9th Dist. Summit No. 21906 (July 7, 2004).

{¶11}  On August 22, 2005, the Northern District granted Ross' petition for a writ of habeas corpus.  The Northern District, applying 28 U.S.C. 2254(d)(1), held that "the adjudication in the State courts 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  *Ross v. Petro, et al.*, 382 F.Supp.2d 967, 988 (N.D.Ohio 2005), quoting 28 U.S.C. 2254(d)(1).  The Northern District determined that the Double Jeopardy clause prohibited any retrial of Ross, as the original trial judge had ordered a mistrial in the absence of a manifest necessity.  *Ross* at 982.

{¶12}  On January 25, 2008, the United States Court of Appeals for the Sixth Circuit reversed the Northern District's decision.  *Ross v. Petro, et al.*, 515 F.3d 653 (6th Cir.2008).  The Sixth Circuit held that the Northern District had "misapprehend[ed] the controlling federal law" and had failed to afford proper deference to this Court when reviewing our original decision to affirm the original trial judge's mistrial ruling.  *Id.* at 661.  The Sixth Circuit concluded that this Court's decision to uphold the trial court's declaration of a mistrial without prejudice for manifest necessity comported with controlling federal law.  *Id.* at 670-671.  Consequently, the Sixth Circuit reversed the Northern District's decision to grant Ross' petition for a writ of habeas corpus.  *Id.* at 671.

{¶13}  After the Sixth Circuit issued its decision, this Court lifted the stay on the State's appeal from the granting of Ross' Crim.R. 29(C) motion for acquittal on his rape charge and the related capital specification.  This Court determined that, although the trial court had initially denied Ross' Crim.R. 29(C) motion, it had the authority to reconsider its ruling.  *State v. Ross*, 184 Ohio App.3d 174, 2009-Ohio-3561, ¶ 11-25 (9th Dist.).  We held that the trial court's initial denial of Ross' timely motion was an interlocutory order that the trial judge "was free to

reconsider up until the entry of a final judgment." *Id.* at ¶ 25. Consequently, we concluded that the trial court had the authority to acquit Ross of the rape charge and the related capital specification against him. *Id.*

{¶14} The State further appealed this Court's decision to the Ohio Supreme Court. The Supreme Court determined that the trial court erred by granting Ross' renewed Crim.R. 29(C) motion over the State's objection because the renewed motion was untimely filed. *State v. Ross*, 128 Ohio St.3d 283, 2010-Ohio-6282, ¶ 45-49. Nevertheless, the Supreme Court left the trial court's judgment of acquittal intact, as it recognized that only the substantive legal ruling underlying it, and not the judgment of acquittal itself, was reviewable on appeal. *Id.* at ¶ 51, citing R.C. 2945.67(A) (State may seek leave to appeal any decision, "except the final verdict"). The Supreme Court remanded the case to the trial court for further proceedings on the remaining charges against Ross. *Id.* at ¶ 52. Before further proceedings commenced, the trial judge who had granted Ross' renewed Crim.R. 29(C) motion recused himself, and another judge took his place.

{¶15} On July 21, 2011, the grand jury issued a supplemental indictment against Ross, charging Ross with each of the following counts: (1) murder, in violation of R.C. 2903.02(A); (2) felony murder, in violation of R.C. 2903.02(B), with felonious assault as the predicate offense; (3) tampering with evidence, in violation of R.C. 2921.12(A)(1); (4) gross abuse of a corpse, in violation of R.C. 2927.01(B); and (5) felonious assault, in violation of R.C. 2903.11(A)(1). The trial court then dismissed the original counts for aggravated murder, felony murder with rape and/or kidnapping as the predicate offense, tampering with evidence, and gross abuse of a corpse at the request of the State. Consequently, the counts that remained for trial

were: (1) murder; (2) felony murder with felonious assault as the predicate offense; (3) tampering with evidence; (4) gross abuse of a corpse; and (5) felonious assault.

{¶16} In January 2012, Ross filed motions to (1) perfect the three verdict forms the original jury completed before their discharge; (2) bar his retrial; (3) suppress any statements he made to the police at the hospital on May 27, 1999; (4) suppress evidence taken from his home on May 27, 1999; and (5) suppress certain eyewitness identifications. The trial court ultimately denied all of Ross' motions. Although Ross attempted to appeal from the court's denial of his motion to perfect the verdict forms and his motion to bar his retrial, this Court dismissed the attempted appeal, as it stemmed from an interlocutory order. *See State v. Ross*, 9th Dist. Summit No. 26350 (Apr. 11, 2012).[2]

{¶17} A jury trial was held. At the conclusion of the trial, the jury found Ross guilty on all counts. The trial court merged the murder and felonious assault counts into the felony murder count for purposes of sentencing and sentenced Ross to a total of 19 years to life in prison.

{¶18} Ross now appeals and raises five assignments of error for our review. For ease of analysis, we rearrange several of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT DENIED DUE PROCESS AND VIOLATED DOUBLE JEOPARDY PROTECTION BY ALLOWING A SECOND TRIAL AND CONVICTION AFTER A FIRST TRIAL HAD RESULTED IN NOT GUILTY VERDICTS[.]

---

[2] The Ohio Supreme Court has since recognized that "an order denying a motion to dismiss on double-jeopardy grounds is a final, appealable order." *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, ¶ 61.

{¶19} In his first assignment of error, Ross argues that his Double Jeopardy rights were offended when he was retried for murder and felony murder, as the original jury found him not guilty of those offenses. We disagree.

{¶20} "The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution protect criminal defendants against multiple prosecutions for the same offense." *State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, ¶ 14. Yet, the retrial of a criminal defendant is permitted if an earlier trial resulted in a mistrial for a manifest necessity. *State v. Widner*, 68 Ohio St.2d 188, 190 (1981), quoting *United States v. Perez*, 22 U.S. 579, 580 (1824).

> Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.

*Arizona v. Washington*, 434 U.S. 497, 505 (1978). In cases involving a mistrial for manifest necessity, "the law has invested Courts of justice with the authority to discharge a jury *from giving any verdict*." (Emphasis added.) *Perez* at 580.

{¶21} There is no dispute that Ross' first trial ended in a mistrial and that the mistrial was the result of a manifest necessity. *See Ross*, 2002-Ohio-7317, at ¶ 18-52 (mistrial decision for manifest necessity affirmed on direct appeal). *See also Ross*, 515 F.3d at 667-671 (habeas relief denied where affirmance of mistrial for manifest necessity comported with clearly established federal law). There is also no dispute that, after the trial judge declared the mistrial, she learned that the jury had completed several verdict forms, finding Ross not guilty of the most

serious charges against him. In our decision affirming the mistrial declaration, this Court did not consider the effect or validity of the verdict forms the jury completed. *Ross*, 2002-Ohio-7317, at ¶ 20. We confined our review to the record as it existed at the time the court declared a mistrial. *Id.* ("Facts unknown to the trial judge and the parties simply cannot enter into the review of the trial court's mistrial decision."). Ross argues that the verdict forms are now ripe for our review because, at the time the trial court denied his motion to bar his retrial, the verdict forms were widely known to exist. He argues that this Court "should find [the verdict forms] dispositive of any conviction as to the murder charges" because they constitute an acquittal and are valid in spite of the mistrial.

{¶22} Initially, we respond to the State's assertion that Ross is collaterally estopped from raising any argument with regard to the jury verdict forms. This Court has recognized that

> [i]ssue preclusion, or collateral estoppel, will preclude the relitigation of a fact or point that was actually and directly at issue in a previous proceeding between the same parties or their privies, and was passed upon and determined by a court of competent jurisdiction. It is not enough that a similar issue * * * was litigated and decided * * *. For collateral estoppel to bar the relitigation of an issue, precisely the same issue must have previously been litigated and decided.

(Internal quotations, citations, and emphasis omitted.) *Price v. Carter Lumber Co.*, 9th Dist. Summit No. 26243, 2012-Ohio-6109, ¶ 10. A state court may apply collateral estoppel when an issue has previously been decided in a federal court case involving the same parties or their privies. *See, e.g., State v. Slagle*, 2d Dist. Montgomery No. 23934, 2012-Ohio-1575, ¶ 41-48; *Price* at ¶ 6-12; *Luchansky v. O'Neil*, 9th Dist. Summit No. 18572, 1998 WL 103333, *2 (Feb. 18, 1998); *Buian v. Civil Service Comm. of Akron*, 9th Dist. Summit No. 10111, 1981 WL 4114, *2 (Aug. 19, 1981). *Compare State v. Burnett*, 93 Ohio St.3d 419, 424 (2001) ("federal statutory or constitutional law made by a federal court other than the United States Supreme Court" is

merely persuasive, not binding, authority for state court when the federal court case is unrelated to the state court case).

{¶23} We do not agree with the State's assertion that collateral estoppel applies here. Although the Sixth Circuit touched upon the existence of the verdict forms in determining that Ross was not entitled to habeas relief, the effect and validity of the verdict forms were not "actually and directly at issue in [the] previous proceeding." *Price* at ¶ 10. The actual issue the Sixth Circuit addressed was whether this Court's decision, affirming the declaration of a mistrial for manifest necessity, represented "an unreasonable application of clearly established federal law." *Ross*, 515 F.3d at 671. In affirming the mistrial declaration, this Court specifically did not consider the effect and validity of the jury verdict forms. *Ross*, 2002-Ohio-7317, at ¶ 20. We limited our review to the facts known to the trial judge at the time she declared the mistrial. *Id.* The Sixth Circuit acknowledged our decision to do so and held that our decision not to consider the verdict forms was, in and of itself, a decision that comported with federal law. *Ross*, 515 F.3d at 667 ("[T]he Ohio Court of Appeals did not err by excluding the verdict forms from its review of [the trial judge's] mistrial ruling."). Thus, any statements the Sixth Circuit made about the effect and validity of the verdict forms are not binding on this Court, as those statements were not essential to the Sixth Circuit's judgment. *See Kelly v. Georgia-Pacific Corp.*, 46 Ohio St.3d 134 (1989), paragraph one of the syllabus ("Where a determination in a prior federal action was not essential to the judgment obtained therein, collateral estoppel will not foreclose consideration of the issue in a subsequent state proceeding involving a different claim for relief."). This Court considers those statements to be persuasive authority. *See Bachus v. Loral Corp.*, 9th Dist. Summit No. 15041, 1991 WL 199906, *2 (Oct. 2, 1991).

{¶24} It is true that the declaration of a mistrial for manifest necessity does not always prevent a trial court from accepting a partial verdict. As a classic example, when jurors are able to unanimously agree on certain counts, but not on others, a trial court may accept their verdicts on the counts for which there is agreement and declare a mistrial on the remaining counts. *See, e.g., State v. Hague*, 61 Ohio App.3d 756, 761-762 (9th Dist.1989). *See also State v. Roper*, 9th Dist. Summit No. 20836, 2002-Ohio-7321, ¶ 73, quoting *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982) ("A 'hung jury remains the prototypical example' of manifest necessity."). In such cases, however, deliberations are at an end and the verdict(s) the court accepts are not tentative. A trial court may not enter judgment upon a tentative verdict, even if the tentative verdict is one for acquittal. *See Blueford v. Arkansas*, 132 S.Ct. 2044, 2050-2052 (2012).

{¶25} In *Blueford*, the defendant went to trial on a charge of capital murder, as well as the lesser included charges of first-degree murder, manslaughter, and negligent homicide. The jurors were given five verdict forms: one for each of the foregoing offenses and one to acquit Blueford of all four offenses. *Id.* at 2049. "There was no form allowing the jury to acquit on some offenses but not others. * * * Any verdict—whether to convict on one or to acquit on all—had to be unanimous." *Id.*

{¶26} Several hours into deliberations the jurors notified the court that they were deadlocked on a charge. After the court issued an *Allen* instruction and the jury still was unable to reach a verdict, the court "asked the foreperson to disclose the jury's votes on each offense." *Id.* The foreperson disclosed that the jury had unanimously voted to acquit Blueford of capital murder and first-degree murder, but were deadlocked on manslaughter and had not yet considered negligent homicide. *Id.* The court then issued the jury another *Allen* instruction and

asked the jurors to resume their deliberations. The jurors, however, later returned and the foreperson declared that "they had not reached a verdict." *Id.* The court then declared a mistrial.

{¶27} When the State sought to retry Blueford, he argued that the Double Jeopardy Clause barred his retrial on the charges of capital murder and first-degree murder because the jury had actually acquitted him of those charges before the court had declared a mistrial. The United States Supreme Court ultimately rejected Blueford's argument. The Supreme Court held that the fact that deliberations had continued after the foreperson relayed the jury's votes to the trial court "deprive[d] [the foreman's] report of the finality necessary to constitute an acquittal on the murder offenses." *Blueford*, 132 S.Ct. at 2050. *Compare Price v. Georgia*, 398 U.S. 323, 329 (1970) and *Green v. United States*, 355 U.S. 184, 191 (1957) (implicit acquittals recognized where juries convicted on lesser-included offenses after being given the "full opportunity to return a verdict" on the greater offenses). The Supreme Court reasoned:

> [a] single juror's change of mind is all it takes to require the jury to reconsider a greater offense.
>
> It was therefore possible for Blueford's jury to revisit the offenses of capital and first-degree murder, notwithstanding its earlier votes. And because of that possibility, the foreperson's report prior to the end of deliberations lacked the finality necessary to amount to an acquittal on those offenses, quite apart from any requirement that a formal verdict be returned or judgment entered.

*Blueford* at 2051. The Supreme Court held that the Double Jeopardy Clause was not a bar to Blueford's retrial. *Id.* at 2053. Thus, a tentative not guilty verdict, meaning one that is reached prior to the end of deliberations, does not constitute an acquittal for purposes of double jeopardy. *Id.* at 2049-2053.

{¶28} More importantly, a mistrial for manifest necessity stemming from a hung jury is materially different than one stemming from the corruption of a juror. *See* R.C. 2945.36(A) (jury may be discharged without prejudice to the State due to "corruption of a juror"). It has long

since been the law that, "in a court of justice, [n]either party [has] a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment in the case." (Internal quotation omitted.) *Simmons v. United States*, 142 U.S. 148, 154-155 (1891). *Accord Washington*, 434 U.S. at 516 ("Neither party has a right to have his case decided by a jury which may be tainted by bias * * *."). As this Court noted in the original appeal in this matter,

> both Ross's interests and those of the State were implicated by the note from the jury foreperson. The note indicated, on its face, that the jury had been tainted with information that should not have been in the jury room and that one of the jurors was refusing to deliberate in good faith. * * *

> The note was an indication of juror misconduct and the information within it was inherently reliable. No evidence that Brad [O']Born (another potential suspect) had passed a polygraph test was presented at trial. For a juror to have gotten this information about the polygraph, he or she would have had to have gotten it from some outside source, suggesting that one of the jurors had disregarded the judge's instructions. According to the note, that juror had also shared the outside information with other jurors. The note further indicated that the juror who had the outside information was willing to agree with anything the others wanted because he was in a hurry to end the deliberations.

> The face of the juror note, therefore, indicated that a member of the jury was refusing to deliberate in good faith and was sharing improper, prejudicial information with other jurors.

*Ross*, 2002-Ohio-7317, at ¶ 30-32. Because the jury "had been tainted," the tentative verdicts the jurors reached were also tainted. *Id.* at ¶ 30-31. We agree with the Sixth Circuit's statement that "it is practically inconceivable that the taints stemming from both the juror corruption and the ex parte communications could have been cured in such a way as to render the tentative verdict forms acceptable as reflective of the jury's final verdict." (Emphasis omitted.) *Ross*, 515 F.3d at 666.

{¶29} The trial court did not err by denying Ross' motions to bar his retrial and to perfect the verdict forms the original jury signed. Because the original trial judge declared a mistrial in the midst of deliberations, the jury's tentative verdicts lacked finality. *See Blueford*,

132 S.Ct. at 2050. More importantly, however, the tentative verdicts could never serve as a final judgment of acquittal because they were the product of a tainted jury. *See Washington* at 516 ("Neither party has a right to have his case decided by a jury which may be tainted by bias * * *."). *See also Kepner v. United States*, 195 U.S. 100, 130 (1904) ("[F]ormer jeopardy includes one who has been acquitted *by a verdict duly rendered*, although no judgment be entered on the verdict.") (Emphasis added.) Ross' first assignment of error is overruled.

{¶30} Before turning to Ross' second assignment of error, we pause to address a motion that Ross filed on March 24, 2014. In his motion, Ross asks this Court to allow additional authority and argument regarding his first assignment of error in light of *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542. As noted in the procedural history portion of this opinion, after we dismissed Ross' attempted appeal from the trial court's denial of his 2012 motions to perfect his verdict forms and bar his retrial, the Ohio Supreme Court decided *Anderson*. *Anderson* holds that "an order denying a motion to dismiss on double-jeopardy grounds is a final, appealable order." *Anderson* at ¶ 61. The *Anderson* Court reasoned that "retrial itself is one of the harms at issue in double-jeopardy cases" and "[t]hat harm cannot be remedied by a subsequent acquittal in the trial court or by the reversal of any conviction through appeal after trial." *Id.* at ¶ 57. Ross argues that his convictions must be vacated in light of *Anderson* because his constitutional rights were violated when this Court dismissed his attempted appeal in 2012.

{¶31} We do not agree that *Anderson* necessitates a reversal of Ross' convictions. Notably, when Ross attempted to appeal this Court's 2012 dismissal for lack of a final, appealable order to the Ohio Supreme Court, it declined to exercise jurisdiction over the appeal. *See State v. Ross*, Ohio Supreme Court Case No. 2012-0901 (Sept. 5, 2012). The only question before the Supreme Court in *Anderson* was whether an appellate court has jurisdiction to review

an order denying a motion to dismiss based on double jeopardy grounds. *Anderson* at ¶ 4. The Supreme Court did not consider the effect of an appellate court's dismissal for lack of jurisdiction on a defendant's convictions, particularly when, as in this case, the record in the later appeal discloses that no double jeopardy violation has occurred. Having reviewed *Anderson*, we conclude that Ross' motion for an order allowing additional authority and argument is not well-taken. As such, it is denied.

Assignment of Error Number Two

THE TRIAL COURT DENIED DUE PROCESS BY FAILING TO DISMISS COUNTS OF FELONY MURDER AND FELONIOUS ASSAULT AS BARRED BY THE STATUTE OF LIMITATIONS[.]

**{¶32}** In his second assignment of error, Ross argues that the trial court erred by not dismissing his felonious assault and felony murder counts, as those counts were barred by the statute of limitations. We disagree.

**{¶33}** This Court reviews de novo the denial of a pretrial motion to dismiss criminal charges on the basis that the statute of limitations period has expired. *See State v. Saxon*, 9th Dist. Lorain No. 09CA009560, 2009-Ohio-6905, ¶ 5. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

**{¶34}** Generally, to prosecute an offender for a felony, the State must commence its prosecution within six years of the commission of the offense. R.C. 2901.13(A)(1)(a). There is, however, "no period of limitation for the prosecution of a violation of section 2903.01 or 2903.02 of the Revised Code." R.C. 2901.13(A)(2). *See also* R.C. 2903.01 (aggravated murder) and 2903.02 (murder). Moreover,

> [t]he period of limitation shall not run during any time a prosecution against the accused based on the same conduct is pending in this state, even though the

indictment, information, or process that commenced the prosecution is quashed or the proceedings on the indictment, information, or process are set aside or reversed on appeal.

R.C. 2901.13(H). "[T]he basic thrust of [R.C. 2901.13] is to discourage inefficient or dilatory law enforcement rather than to give offenders the chance to avoid criminal responsibility for their conduct." R.C. 2901.13, Legislative Service Commission Note (1973). *Accord Toussie v. United States*, 397 U.S. 112, 114-115 (purpose of statutes of limitations discussed).

{¶35} There is no dispute that the State timely commenced its prosecution against Ross by causing his initial indictment to be filed on June 10, 1999, and his initial supplemental indictment to be filed on December 20, 1999. Ross' argument is that a portion of his later supplemental indictment, filed July 21, 2011, runs afoul of R.C. 2901.13. Specifically, he argues that the State could not rely on R.C. 2901.13's tolling provision to prosecute him for felonious assault and felony murder predicated on felonious assault. According to Ross, those charges were not based on the "same conduct" as the prosecution pending against him as a result of his earlier indictments. R.C. 2901.13(H).

{¶36} Ross' 1999 indictments charged him with aggravated murder, felony murder, rape, and kidnapping, as well as several other crimes that are not relevant to our discussion here. The aggravated murder charge alleged that Ross "did purposely cause the death of Hannah Hill, while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping and/or rape, in violation of Section 2903.01(B) of the Ohio Revised Code." The felony murder charge alleged that Ross "did cause the death of Hannah Hill, as a proximate result of * * * committing or attempting to commit Kidnapping and/or Rape, an offense of violence that is a felony of the first or second degree, in violation of Section 2903.02(B) of the Ohio Revised Code." The rape charge alleged that Ross "did engage in sexual

conduct with Hannah Hill, the offender having purposely compelled Hannah Hill to submit by force or threat of force, in violation of Section 2907.02(A)(2) of the Ohio Revised Code." Finally, the kidnapping charge alleged that Ross "did by force, threat, or deception, remove Hannah Hill from the place where found and/or restrain the liberty of such person, in violation of Section 2905.01(A) of the Ohio Revised Code." As previously noted, the original trial court judge dismissed the kidnapping charge at the end of Ross' first trial, and the second trial court judge granted Ross' motion for acquittal on the rape charge.[3] The trial court dismissed the 1999 aggravated murder and felony murder counts at the State's request after the grand jury issued the 2011 indictment.

{¶37} Relevant to our discussion here, the 2011 indictment charged Ross with felony murder and felonious assault. The felony murder charge alleged that Ross "did cause the death of Hanna C. Hill as a proximate result of * * * committing or attempting to commit Felonious Assault, an offense of violence that is a felony of the first or second degree, in violation of Section 2903.02(B) of the Ohio Revised Code." The felonious assault charge alleged that Ross "did knowingly cause serious physical harm to Hanna C. Hill, in violation of Section 2903.11(A)(1) of the Ohio Revised Code."

{¶38} In his motion to dismiss the 2011 counts for felony murder and felonious assault, Ross wrote:

> The [S]tate has continually made it clear that the prosecution in this 2011 indictment is distinct from the theory of the 1999 case. The 1999 case was prosecuted as a rape, kidnapping, felony murder. As this Court is aware, acquittals were entered in the rape and kidnapping counts. There was no felonious assault conduct alleged in the 1999 case. In the recent 404(B) hearing held in this case * * *, the [S]tate made it very clear that this case now is distinct

---

[3] Although the court's "substantive legal ruling[]" to acquit Ross on the rape charge was an error, the court's ultimate order of acquittal was not appealable. *Ross*, 128 Ohio St.3d 283, 2010-Ohio-6282, at ¶ 51.

and different. The cased has morphed into a choking during sex to elevate sexual arousal. The whole theory of the [2011] indictment is different from the 1999 case.

In its opposition to Ross' motion to dismiss, the State countered:

In 1999, the beating/choking [of Hill] was the force Ross used to compel Hannah to submit to sex and to restrain her liberty; in 2011, the beating/choking is simply serious physical harm. Because the rape and kidnapping counts are no longer a part of this case, the State has re-indicted Ross for felonious assault based on the same conduct. The counts in the indictment have changed, but the underlying allegation of conduct has not.

On appeal, Ross continues to argue that, because the State's theory of the case changed from 1999 to 2011, "the 'same conduct' tolling provision of R.C. 2901.13(H) [does] not apply."

{¶39} There is a dearth of law in Ohio regarding the application of R.C. 2901.13(H). Nevertheless, the plain language of the statute commands that the "conduct" underlying a pending prosecution be examined, not the theories the State chooses to attach to that conduct. *See State v. Raber*, 9th Dist. Wayne No. 13CA0020, 2014-Ohio-249, ¶ 14, quoting *State v. Knoble*, 9th Dist. Lorain No. 08CA009359, 2008–Ohio–5004, ¶ 12 ("A court must enforce an unambiguous statute as written, 'making neither additions to the statute nor subtractions therefrom.'"). In *State v. Mruk*, 6th Dist. Lucas No. L-96-075, 1997 WL 243580, *4-5 (May 9, 1997), one of the few cases applying R.C. 2901.13(H), the Sixth District looked to the "ordinary meaning of the term conduct," when examining whether the statute's tolling provision applied.

{¶40} In *Mruk*, the defendant was originally charged and tried for felonious sexual penetration. The basis for the charge was strictly that the victim was less than thirteen years of age. *Mruk* at *1. When the defendant's conviction was later overturned by way of post-conviction relief, however, the State obtained a new indictment. The new indictment still charged the defendant with felonious sexual penetration, but added that the defendant had purposely compelled the less than thirteen year old victim "to submit by force or threat of force";

an additional element that would subject the defendant to a mandatory sentence of life in prison. *Id.* at \*1, 3.  The Sixth District held that, although R.C. 2901.13(H) had tolled the statute of limitations for the lesser included offense of felonious sexual penetration without force or threat of force, the statute of limitations barred the State from prosecuting the defendant on the enhanced charge.  *Id.* at \*4-5.  The Sixth District explained that the enhanced charge did not involve the "same conduct" as the pending prosecution for purposes of R.C. 2901.13(H) because the enhanced charge required proof of additional conduct that was not alleged in the original indictment (i.e., proof of force or threat of force).  *Id.*  The court held that the defendant's conviction constituted a conviction solely on the charge of felonious sexual penetration without force or threat of force.  *Id.* at \*5.

{¶41}  Although the State may have refined its theory of this case since its inception, Ross has not explained what additional *conduct* he believes the 2011 indictment criminalizes that his 1999 indictments did not.  *See* App.R. 16(A)(7).  The 2011 indictment charged Ross with felonious assault based on serious physical harm to Hill.  The allegation of serious physical harm did not constitute "additional conduct" because the 1999 indictments alleged that Ross murdered Hill as a result of his committing or attempting to commit crimes against her that involved the use of force.  *Compare Mruk*, 1997 WL 243580, at \*4-5.  Clearly, murder as a result of the use of force entails serious physical harm to the victim.

{¶42}  We agree with the State that the Eleventh Circuit's discussion of tolling with respect to superseding indictments is persuasive.  In *United States v. Italiano*, 894 F.2d 1280 (11th Cir.1990), the Eleventh Circuit held:

> A superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges.  For purposes of the statute of limitations, the "charges" in the

> superseding indictment are defined not simply by the statute under which the defendant is indicted, but also by the factual allegations that the government relies on to show a violation of the statute.

> Notice to the defendant is the central policy underlying the statutes of limitation. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for certain activities and should prepare a defense.

(Internal citations omitted.) *Italiano* at 1282-1283. The record reflects that Ross had notice of the allegations against him and that his timely-filed 1999 indictments were still pending at the time the 2011 indictment was filed. Felonious assault was not specifically charged in the 1999 indictments, but its addition in 2011 did not "broaden or substantially amend the original charges." *Id.* at 1282. The felonious assault charge was premised upon the "same conduct" as the pending prosecution against Ross. R.C. 2901.13(H). *Compare Mruk* at *4-5. Consequently, the statute of limitations was tolled as to that charge, and the trial court did not err by refusing to dismiss it. Nor did it err by refusing to dismiss the felony murder count in the 2011 indictment.

{¶43} Ross argues that, because his felonious assault charge is time-barred, his felony murder charge also must be time-barred, as it is predicated upon the felonious assault charge. We have already determined, however, that Ross' felonious assault charge is not time-barred. Moreover, the plain language of R.C. 2901.13 provides that "[t]here is no period of limitation for the prosecution of a violation of section * * * 2903.02 of the Revised Code." R.C. 2901.13(A)(2). *See also State v. Jewett*, 10th Dist. Franklin No. 11AP-1028, 2013-Ohio-1246, ¶ 94-95 (no statute of limitations for felony murder). Therefore, the trial court did not err in denying Ross' motion to dismiss his felonious assault and felony murder charges. Ross' second assignment of error is overruled.

Assignment of Error Number Four

THE TRIAL COURT DENIED DUE PROCESS AND ACTED CONTRARY TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 14, OHIO CONSTITUTION WHEN IT DENIED MOTIONS TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT, TO SUPPRESS STATEMENTS, AND TO SUPPRESS IDENTIFICATIONS[.]

{¶44}  In his fourth assignment of error, Ross argues that the court erred by denying his motions to suppress without giving him a "full and fair opportunity to have these motions heard." He argues that the motions warranted an evidentiary hearing and that the trial court erred by summarily denying them without considering relevant authority that has issued since his original trial.

{¶45}  In 1999, Ross filed motions to suppress (1) statements he made to the police while at home and at the hospital, (2) evidence taken from his home pursuant to a warrant, and (3) certain eyewitness identifications.  The original trial judge held suppression hearings on Ross' motions, accepted supplemental briefing from both parties, and ultimately denied the motions in an 18-page entry.  In January 2012, Ross again filed motions to suppress.  All three motions mirrored Ross' original motions to suppress,[4] and two of the motions specifically requested that the court simply "reconsider [its] previous ruling."  The third, the motion to suppress certain eyewitness identifications, alleged that it raised a different basis for suppressing the eyewitness identifications than did Ross' original motion.

---

[4] Ross' new motion to suppress the statements he made to the police was limited to the statements he made at the hospital.  Ross' new motion to suppress did not challenge any of the statements he made to the police in his home.

{¶46} The trial court addressed Ross' 2012 suppression motions at a February 7, 2012 status conference. The court indicated that it would hold in abeyance the motions to suppress the eyewitness identifications and statements Ross made at the hospital in order to further review the evidentiary materials attached to those motions. Yet, the court still accepted oral arguments from the parties on each motion. As to the motion to suppress the evidence taken from Ross' home pursuant to a warrant, the court noted that it had reviewed all of the evidence the parties had submitted and had "studied [the] search warrant quite carefully." After hearing arguments from both parties, the court set forth its rationale and denied Ross' motion to suppress the evidence taken from his home. On February 21, 2012, the court journalized its denial of Ross' motion to suppress the evidence taken from his home. The court denied Ross' remaining motions to suppress on February 27, 2012, after having reviewed all of the evidentiary materials the parties submitted regarding those motions.

{¶47} Because a trial court's ruling on a motion to suppress is an interlocutory ruling, a court may reconsider its initial suppression ruling any time before final judgment. *Stow v. Sexton*, 9th Dist. Summit No. 17263, 1996 WL 11985, *1 (Jan. 10, 1996). *Compare State v. Hartman*, 9th Dist. Medina No. 12CA0057-M, 2013-Ohio-4407, ¶ 5-7 (law of the case barred re-litigation of defendant's suppression motion after his final judgment of conviction was overturned on appeal). The fact that a court may reconsider its initial ruling, however, does not mean that the court must begin anew or disregard evidence the court has already received. "It is well established that a trial court may take judicial notice of prior proceedings in the immediate case before it." *State v. Brown*, 9th Dist. Summit No. 24119, 2008-Ohio-5846, ¶ 16.

{¶48} Ross argues that the trial court failed to hold evidentiary hearings on his motions to suppress. There is no dispute, however, that the original trial judge in this matter held

hearings on Ross' original motions to suppress. Ross specifically attached testimony from those suppression hearings to his 2012 motions and relied upon it extensively in support of two of his motions. Ross never asked the court to hold further evidentiary hearings in any of his 2012 motions, in any of his responses to the briefs the State filed in opposition to his motions, or at the February 7, 2012 status conference the court held. He also never objected when the trial court denied his motions without holding further evidentiary hearings. *See State v. Wright*, 9th Dist. Summit No. 25638, 2011-Ohio-5641, ¶ 5, quoting *State v. Childs*, 14 Ohio St.2d 56, 61 (1968) ("It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."). Therefore, Ross, who has not argued plain error, cannot now complain that the trial court erred by failing to hold new evidentiary hearings on his 2012 motions to suppress. *See Wright* at ¶ 5.

{¶49} Although the trial court wrote in her February 27, 2012 entry that "deference" was due to the original trial judge's ruling on Ross' motions to suppress, the court also went on to address Ross' motions "in an abundance of caution given the unique course of this case." The court ruled on the substantive arguments set forth in each motion, including Ross' argument that a recently enacted statute helped demonstrate why the photo line-up procedure the police used to secure the eyewitness identifications was unduly suggestive. Importantly, Ross has not challenged any of the trial court's suppression rulings on their underlying merits. He merely argues that the court failed to afford him a "full and fair opportunity to have [his] motions heard." The record, however, does not bear out Ross' assertion. The court ruled upon the merits of each motion and did so with the benefit of the evidence taken in the prior proceedings on Ross' initial motions to suppress, the additional arguments and/or law submitted in support of the

2012 motions, and oral arguments from both parties. Ross' argument that the court failed to afford him a "full and fair opportunity to have [his] motions heard" lacks merit. His fourth assignment of error is overruled.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED DUE PROCESS BY ALLOWING PREJUDICIAL CHARACTER AND OTHER ACTS TESTIMONY INTO EVIDENCE[.]

**{¶50}** In his third assignment of error, Ross argues that the trial court abused its discretion by permitting the State to introduce certain other acts evidence during trial. We disagree.

**{¶51}** Under Evid.R. 404(B), other acts evidence "is not admissible to prove that the defendant acted in conformity with the character demonstrated by the other acts, but other acts evidence may be admissible for different purposes." *State v. Guerra*, 9th Dist. Lorain No. 12CA010188, 2013-Ohio-5367, ¶ 17. "Evid.R. 404(B) contains a non-exhaustive list of exceptions under which other acts evidence may be admitted for a purpose other than to show propensity." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 41. "Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove [propensity] * * *, but it does not preclude admission of that evidence for other purposes, e.g., to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 25.

**{¶52}** "[I]n considering other acts evidence, trial courts should conduct a three-step analysis." *Id.* at ¶ 19.

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less

probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Id.* at ¶ 20. "[D]ecisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus. Consequently, we review a trial court's decision to admit other acts evidence for an abuse of discretion. *Id.* An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶53} Ross argues that the trial court abused its discretion by allowing the State to introduce improper other acts evidence through seven different witnesses: Nicole Estep, Julie Cain, Jennifer Edwards, Heather Hamrick, Jennifer Carter, Michael Riley, and J.T. The primary focus of his argument, however, concerns the testimony of only one of those witnesses: J.T. As such, we begin by reviewing the court's decision to allow J.T. to testify about an incident that occurred in 2004.

**The Testimony of J.T.**

{¶54} J.T. testified that she met Ross in a bar in mid-June 2004.[5] She and Ross "did a lot of shots" and drank several beers before she eventually invited him and a few of her friends back to her house. Not long after, J.T. asked everyone to leave because she was not feeling well. Her friends obliged, but Ross asked to use the bathroom. J.T. allowed Ross to use the upstairs bathroom while she said goodbye to her friends. When a noticeable amount of time had elapsed

---

[5] The incident occurred while Ross was free on bond, following the mistrial in this case.

and he still had not returned, J.T. decided to check on him. J.T. testified that, as she reached the landing on her stairwell, Ross attacked her. Specifically, Ross stabbed her in the face, wrestled her to the bottom of the steps, and began "pounding [her] face in with both fists." Ross also threatened J.T. that, if she fought him, he would "come back [] and kill [her] and [her] children."

{¶55} J.T. testified that, as she continued to try to get away from Ross, he started choking her from behind while "bumping up against [her]" with his stomach and hips. At some point, Ross was able to flip J.T. over and began choking her from the front. J.T. stated that she could not breathe during the attack and "passed out a few times." She could not recall for sure if she had clothes on during the entire encounter, but stated that she believed she did. She also stated, however, that her "underwear never were found."

{¶56} J.T. testified that Ross finally let go of her when she threw up. At that point, she fell to the floor and remained still, pretending to be dead. Ross then said, "Oh, f***, she's dead. Not again." After cursing several more times, Ross kicked J.T. and flipped her over, but she remained still. Ross then left the house, and J.T. was able to call the police. J.T. did not offer any specific testimony with regard to Ross having forcibly penetrated her, but she used the word "rape" to describe the encounter later on in her testimony. J.T. testified that, as a result of the incident, she suffered nerve damage to her neck and a broken jaw, which had to be wired shut for six months.

{¶57} The trial court determined that J.T.'s testimony was admissible to prove identity, modus operandi, motive, and scheme, system, or plan. The evidence at trial was that Hill sustained multiple injuries to the face as a result of blunt force trauma and died due to asphyxiation by manual compression of the neck. Hill had a blood alcohol content level of .115 at the time of her autopsy, although the medical examiner could not definitively say whether that

result was due to alcohol ingestion or bacteria generated by decomposition. Further, forensic analysts were able to identify sperm cells on the back of Hill's underwear and the back, inside of her corduroy pants, both of which were found in a garbage bag outside Ross' apartment window at the time the police executed a search warrant. There was testimony that Ross' DNA profile was consistent with the DNA profile obtained from the sperm found on Hill's underwear and corduroy pants.

{¶58} Apart from the medical and forensic evidence pertaining to Hill and her clothing, there was testimony at trial that Ross had an interest in strangling women during intercourse. Julie Cain, a young woman who briefly dated Ross around the time of Hill's murder, testified that she was "very reluctant" to have sex with Ross because "he would talk about the ultimate orgasm, that being choking a woman out during the orgasm." Joseph Garbarik, a man with whom Ross was incarcerated in 1999, testified that Ross said the reason he was in jail was because a girl had died after he "ended up choke-f***ing her." Moreover, Heather Hamrick, a friend of Ross' who began a sexual relationship with him shortly before the incident with J.T., testified that Ross would choke her while the two were having sex. Hamrick testified that Ross would instruct her to hold one of her arms up while he choked her so that, if her arm fell down, he would know she was losing consciousness.

{¶59} "Other acts may [] prove identity by establishing a *modus operandi* applicable to the crime with which a defendant is charged." *State v. Lowe*, 69 Ohio St.3d 527, 531 (1994). *Accord State v. Jamison*, 49 Ohio St.3d 182 (1990), syllabus ("Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B).").

> A certain *modus operandi* is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to

prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain *modus operandi*, other-acts evidence must be related to and share common features with the crime in question.

*Lowe* at 531. Admissibility "is not adversely affected simply because the other [crimes] differed in some details." *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, ¶ 44, quoting *Jamison* at 187.

**{¶60}** The trial court reasoned that J.T.'s testimony was admissible because it provided circumstantial evidence of "idiosyncratic behavior" and "an evolving sexual fetish" on Ross' part. The court held that Hill's murder and the attack on J.T. shared sufficient similarities to "provide a behavioral fingerprint." Specifically, the court noted that there was evidence that both women: (1) were intoxicated prior to the respective attacks on each of them, (2) sustained severe blows to the face during the respective attacks, (3) remained at least partially clothed while being sexually assaulted, (4) lost consciousness due to some form of strangulation, and (5) either died (Hill) or almost died (J.T.) as a result. The court held that J.T.'s testimony was admissible to prove identity, modus operandi, motive, and scheme, system, or plan.

**{¶61}** As previously set forth, courts apply a three-part test when considering the admissibility of other acts evidence. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 19-20. With regard to relevancy, Ross' theory of the case at trial was that Hill had been murdered by her boyfriend, Bradley O'Born. The defense painted O'Born as an abusive, controlling man who killed Hill and framed Ross for her murder after learning that she and Ross might be romantically involved. Therefore, the identity of the perpetrator of Hill's murder was directly at issue. J.T.'s testimony was relevant to prove identity, as it tended to show that Ross perpetrated the crime against Hill. *See Craig* at ¶ 44. *See also State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 187-195.

{¶62} As the trial court noted, the crimes against Hill and J.T. shared several common characteristics. Each woman's face was severely beaten before a sexual assault that occurred during manual strangulation. Both women were strangled to the point that they lost consciousness, with Hill dying as a result. Additionally, each woman was at least partially clothed during the respective attacks. The forensic evidence showed that there was semen consistent with Ross' DNA profile on the back of Hill's underwear and pants, and J.T. testified that Ross initially choked her from behind, while "bumping up against [her]" with his stomach and hips. Moreover, J.T. testified that she drank heavily with Ross before the encounter, and Hill had an elevated blood alcohol level at the time of her death. Given all of the "common features" that link Hill's murder and the attack on J.T., we must conclude that the trial court acted within its sound discretion when it found that J.T.'s testimony met the admissibility requirements of Evid.R. 404(B). *See Craig* at ¶ 44; *Jones* at ¶ 187-195. *Compare State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 18. The only remaining issue is whether the probative value of J.T.'s testimony was substantially outweighed by the danger of unfair prejudice as a result of its admission. *See Williams* at ¶ 20.

{¶63} Ross argues that he was substantially prejudiced by the admission of J.T.'s testimony because, apart from her testimony, "there was *no* other, *overwhelming* evidence of guilt." (Emphasis sic.) Yet, Ross himself admitted to the police that Hill had been at his apartment the night she disappeared and that they had "kissed and stuff like that." The police found Hill's underwear, pants, socks, shoes, and purse in a garbage bag outside Ross' window when they searched his apartment, and there was testimony to support the conclusion that Ross had dropped the bag out of the window as the police were ascending the stairs to his apartment. Moreover, DNA consistent with Ross' DNA was found on Hill's underwear, her pants, and

under her fingernails. There was testimony that, on the day the police arrested Ross, he had fresh scratch marks on the back of his neck. Additionally, there was testimony that DNA found on Hill's shirt, which was still on her body and which tested presumptively positive for blood, was consistent with Ross' DNA profile. The record does not support Ross' assertion that, without J.T.'s testimony, the jury would not have convicted him.

{¶64} The trial court gave the jury no less than four limiting instructions regarding J.T.'s testimony and, on two of those occasions, repeated the limiting instruction directly after giving it. At the close of the case, the court instructed the jury:

> Jurors, evidence was received about the commission of acts other than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose.
>
> It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in accordance with that character.
>
> If you find that the evidence of other acts is true, and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves the defendant's motive, and/or the identity of the person who committed the offenses in this trial. That evidence cannot be considered for any other purpose.

"A presumption exists that the jury has followed the instructions given to it by the trial court." *State v. Murphy*, 65 Ohio St.3d 554, 584 (1992). The court's instructions here "minimized the likelihood of any undue prejudice regarding the jury's consideration of [J.T.'s] testimony." *Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, at ¶ 194. Further, while the court allowed J.T. to testify regarding the underlying circumstances of the attack Ross perpetrated upon her, the court did not permit the State to disclose to the jury that Ross was convicted of attempted murder, rape, kidnapping, and felonious assault as a result of the incident. *See State v. Ross*, 9th Dist. Summit Nos. 22447 & 22598, 2005-Ohio-5189 (Ross' convictions for the attack of J.T. affirmed). Considering the three-part test set forth in *Williams*, we cannot conclude that the trial

court abused its discretion when it determined that J.T.'s testimony was admissible. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 19-20.

**{¶65}** In addition to arguing that J.T.'s testimony was inadmissible under *Williams*, Ross argues that the trial court should have found that the State was collaterally estopped from seeking to admit J.T.'s testimony. First, he points to a statement one prosecutor made at a February 2, 2012 motion hearing wherein he referred to the attack against J.T. as "an unrelated crime." The prosecutor's statement, however, cannot be taken out of context. The prosecutor made the statement in the context of discussing whether Ross would suffer any prejudice if the court granted a continuance for further forensic testing. Specifically, the prosecutor argued that Ross would not be prejudiced by the delay because he was already "serving a sentence on an unrelated crime," (i.e., a crime other than the one at issue). The prosecutor's statement was not a comment on the admissibility of J.T.'s testimony, and we decline Ross' invitation to construe it as such.

**{¶66}** Second, Ross argues that the doctrine of collateral estoppel should have barred J.T.'s testimony because, in J.T.'s case, the State secured a ruling that barred the introduction of any evidence of this case (the Hill case). Ross attached the motion in limine that the State filed in J.T.'s case to one of his filings in the court below. In its motion in limine in the J.T. case, the State asked the court to exclude any evidence regarding the rape and murder of Hill because its admission could be prejudicial to both parties. The State explained in its motion:

> As of this date, no final decision has been made as to whether the Defendant will be retried in connection with [the Hill] case. Assuming *arguendo* that * * * the Defendant can be retried for the crimes alleged in [the Hill case], such retrial could not occur prior to the Defendant's trial in the case at bar. Thus, if any evidence related to the rape and murder of Hannah Hill is introduced, such evidence would be based on facts that have not yet been proven in a court of law. As such, the introduction of such evidence would be improper under Rule 404(B).

The State specifically noted in its motion that it was not arguing that the Hill case was admissible under Evid.R. 404(B).

{¶67} The trial court here rejected Ross' argument that the State was collaterally estopped from seeking the admission of J.T.'s testimony. The court reasoned that the underlying rationale for the State's motion in limine in J.T.'s case was that this case was still being litigated in both the federal and state courts. Thus, the State's prejudice argument in the J.T. case arose from concerns regarding this case's lack of finality, not concerns regarding the admissibility of testimony under Evid.R. 404(B). We agree with the trial court's rationale. Collateral estoppel only bars relitigation when "precisely the same issue" was previously litigated and decided between the same parties. *Price*, 2012-Ohio-6109, at ¶ 10. Because the court in the J.T. case did not rule upon "precisely the same issue" as was presented here, we reject Ross' collateral estoppel argument.

{¶68} Finally, Ross argues that the court abused its discretion by allowing J.T.'s testimony because it did so while simultaneously refusing to allow him to introduce evidence of his rape acquittal in this case (the Hill case). He avers that the acquittal would have served as evidence that he did not rape Hill and, therefore, would have rebutted the State's argument that the crimes against Hill and J.T. were similar. Ross' argument, however, does not bear upon the admissibility of J.T.'s other acts testimony. The trial court refused to allow evidence of the rape acquittal because the retrial involved "a different set of evidence" than the first trial (e.g., evidence from new DNA testing) and there was too great a chance that the already complex evidence in the retrial would "be made further difficult and muddied by what happened in the first trial." The decision to exclude evidence of the acquittal constituted a separate evidentiary ruling. Ross has not assigned the court's separate evidentiary ruling as error. *See* App.R.

16(A)(7). His assignment of error is only that the court abused its discretion in allowing other acts testimony into evidence. *See Taylor v. Hamlin-Scanlon*, 9th Dist. Summit No. 23873, 2008-Ohio-1912, ¶ 12 ("[A]n appellant's assignment of error provides this Court with a roadmap to guide our review."). As such, we decline to address Ross' argument regarding the trial court's refusal to allow evidence of his rape acquittal in this case. *See State v. Gary*, 9th Dist. Wayne No. 12CA0014, 2012-Ohio-5813, ¶ 21.

{¶69} Ross has not shown that the trial court abused its discretion by admitting J.T.'s testimony. As such, we reject his argument to the contrary.

**The Testimony of Julie Cain, Heather Hamrick, and Jennifer Carter**

{¶70} Ross also argues that the trial court abused its discretion by admitting certain statements made by Julie Cain, Heather Hamrick, and Jennifer Carter. Cain testified that Ross had a fight with another man (Michael Riley) before Hill's disappearance. She also testified that Ross expressed an interest in choking women during sexual intercourse. Hamrick testified that she and Ross had a sexual relationship and that he would choke her during intercourse. She also testified that Ross had a sick sense of humor and that she heard strange noises coming from Ross' bedroom on the night Hill disappeared. Carter testified that people routinely used and sold drugs at Ross' apartment. She also testified that she once assaulted another girl at Ross' request and that, when she and Ross spoke about Hill on one occasion, he stated that he had "dealt with" her.

{¶71} The record reflects that Ross did not object to several of the foregoing statements at trial. Furthermore, he has not analyzed any of the foregoing statements in his brief on appeal under the three-part test set forth in *Williams*. He merely notes what each witness said. "An appellant bears the burden of setting forth an argument on appeal and pointing this [C]ourt to

applicable, legal authority in support of that argument." *State v. Raber*, 9th Dist. Wayne No. 09CA0065, 2010-Ohio-4066, ¶ 30. This Court will not conduct an analysis under *Williams* on Ross' behalf when he has not done so. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out."). We reject Ross' unsupported argument that the trial court abused its discretion by admitting the testimony of Cain, Hamrick, and Carter.

**The Testimony of Nicole Estep, Jennifer Edwards, and Michael Riley**

**{¶72}** Finally, Ross argues that the court abused its discretion by admitting certain statements made by Nicole Estep, Jennifer Edwards, and Michael Riley. Estep testified that she was with Ross shortly before the police executed a search warrant at his apartment and that he attempted to rape her. She also testified that Ross threw something out of his apartment window when the police arrived. Edwards testified that she was close friends with Hill and that Hill never would have voluntarily kissed Ross because Hill knew that he had herpes. Riley testified that he and Ross had a fight before Hill's death, Ross' hand was broken during the fight, and Ross later threatened to kill him. He also testified that Ross offered him money to clean his apartment after Hill disappeared.

**{¶73}** To the extent that the statements Ross cites even constitute other acts testimony, the record reflects that Ross failed to object to any of the statements at trial. Moreover, he does not argue plain error on appeal. "[T]his [C]ourt will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *State v. Kleinfeld*, 9th Dist. Summit No. 24736, 2010-Ohio-1372, ¶ 10. Because Ross has not argued plain error on appeal, we will not examine the merits of his argument regarding the testimony of Estep, Edwards, and Riley. *See State v. Lollis*,

9th Dist. Summit No. 26607, 2014-Ohio-684, ¶ 39. Ross' fourth assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT VIOLATED DUE PROCESS BY DENYING A MOTION FOR NEW TRIAL AND GRANTING A MOTION TO REVOKE JAIL TIME CREDIT WHEN DIVESTED OF JURISDICTION DUE TO A PENDING APPEAL[.]

**{¶74}** In his fifth assignment of error, Ross argues that the trial court erred by denying his motion for a new trial and by granting the State's motion to revoke a portion of his jail-time credit. Specifically, Ross argues that the court lacked jurisdiction to rule on either motion, as the court's rulings came after Ross had filed his notice of appeal in this Court.

**{¶75}** The trial court issued its sentencing entry in this case on October 19, 2012. On November 8, 2012, Ross filed both a motion for a new trial and a notice of appeal in this Court. The State later filed a brief in opposition to Ross' motion for a new trial. On December 13, 2012, the trial court denied Ross' motion for a new trial. This Court granted Ross' motion to amend his notice of appeal in order to include the new trial ruling in the record on appeal. *See State v. Ross*, 9th Dist. Summit No. 26694 (Jan. 24, 2013).

**{¶76}** "[A] notice of a direct appeal divests the trial court of jurisdiction to consider a motion for a new trial." *State v. Yeager*, 9th Dist. Summit No. 21676, 2004-Ohio-1239, ¶ 8. Although it is within this Court's authority to stay an appeal and remand a matter for the trial court to rule upon a motion for a new trial, *see* App.R. 4(B)(3), neither party asked this Court to do so here. Accordingly, once Ross filed his notice of appeal on November 8, 2012, the trial court was divested of jurisdiction to rule upon his motion for a new trial. The court's new trial ruling is vacated pursuant to that determination. *See Yeager* at ¶ 9. To the extent Ross' fifth assignment of error addresses the court's new trial ruling, it is sustained.

{¶77} Ross also argues that the trial court lacked jurisdiction to grant the State's motion to revoke a portion of his jail-time credit after he had already filed his notice of appeal. During Ross' sentencing hearing, the trial court indicated that Ross would be entitled to 841 days of jail-time credit. On October 19, 2012, the State filed a motion to revoke a portion of that jail-time credit and to afford Ross only 696 days of credit. Later that same day, the trial court issued Ross' sentencing entry and gave Ross credit for 841 days.

{¶78} The record on appeal does not contain a ruling from the trial court revoking a portion of Ross' jail-time credit. Ross only ever asked this Court to amend his notice of appeal in order to include the court's ruling on his motion for a new trial. Any ruling that the court issued with regard to revoking jail-time credit, therefore, is not a part of the record on appeal. As such, we lack jurisdiction to consider the portion of Ross' assignment of error that pertains to a post-appeal jail-time credit ruling. *See Desai v. Franklin*, 177 Ohio App.3d 679, 2008-Ohio-3957, ¶ 55-56 (9th Dist.).

## III

{¶79} Ross' fifth assignment of error is sustained in part. This Court lacks jurisdiction to consider the remainder of his fifth assignment of error. Ross' other assignments of error are overruled, and his March 24, 2014 motion to allow additional authority and argument is denied. The judgment of the Summit County Court of Common Pleas is affirmed in part, vacated in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
vacated in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
BETH WHITMORE
FOR THE COURT

HENSAL, J.
<u>CONCURS.</u>

BELFANCE, P. J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶80} I generally concur in the majority's judgment. With respect to Mr. Ross' first assignment of error, I agree that it is properly overruled because the verdict forms at issue were never filed and in particular were not filed prior to the declaration of the mistrial.

{¶81} With respect to Mr. Ross' second assignment of error concerning statutes of limitations, I agree that it is properly overruled. Although Mr. Ross argues that the statute of limitations had run for felony murder, there is no statute of limitations for felony murder. *See* R.C. 2901.13(A)(2). Furthermore, R.C. 2901.13(H) tolls the running of the statute of limitations

for an offense during the time when "a prosecution against the accused based on the same conduct is pending in this state * * *." Although I have concerns about the potential scope of the phrase "the same conduct[,]" which when applied in some contexts could raise significant constitutional issues, the felonious assault charge in this case appears to be part of "the same conduct" as the murder charge under even the most limited definition, *see State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, ¶ 19 ("[T]he offense of murder necessarily includes the commission of felonious assault through causing serious physical harm, because purposely causing death necessarily involves knowingly causing serious physical harm."), and Mr. Ross has not developed any argument as to why it would not be. *See* App.R. 16(A)(7). Thus, it appears that R.C. 2901.13(H) would apply in this case, and, to the extent the statute could potentially present fundamental problems of fairness or infringe on a defendant's constitutional rights, those arguments are not being made in this appeal. *See* App.R. 16(A)(7).

{¶82} Accordingly, I concur in the judgment.


APPEARANCES:

TIMOTHY J. MCGINTY, Prosecuting Attorney, and MATTHEW E. MEYER and CHRIS SCHROEDER, Assistant Prosecuting Attorneys, for Appellant.

MARK H. LUDWIG, Attorney at Law, for Appellee.