[Cite as *Suiter v. Karimiam*, 2015-Ohio-3330.]

STATE OF OHIO         )         IN THE COURT OF APPEALS
                     )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

NATHAN SUITER, et al.              C.A. No.     27496

     Appellants

     v.                            APPEAL FROM JUDGMENT
                                   ENTERED IN THE
HOJATOLLAH KARIMIAN, M.D., et al.    COURT OF COMMON PLEAS
                                   COUNTY OF SUMMIT, OHIO
     Appellees                 CASE No.    CV2010-05-3834

DECISION AND JOURNAL ENTRY

Dated: August 19, 2015

MOORE, Judge.

{¶1}    Plaintiff-Appellant, Mary Suiter, individually and as executrix of the Estate of Nathan Suiter,[1] appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2}    On May 27, 2010, Nathan and Mary Suiter ("the Suiters") filed suit against Dr. Hojatollah Karimian and Akron General Medical Center's Heart Center ("the Heart Center") for medical malpractice and loss of consortium. The Suiters alleged that Dr. Karimian had "negligently failed to properly assess, test, diagnose, advise, treat and/or otherwise care for Mr. Suiter's atrial fibrillation," and, as a result, Mr. Suiter had "suffered a disabling stroke" on or about December 15, 2008. Both defendants were served with the complaint via Federal Express,

---

[1] Plaintiff-Appellant, Nathan Suiter, passed away while this matter was pending on appeal. This Court granted a motion to substitute Mary Suiter, as executrix of the Estate of Nathan Suiter, for Mr. Suiter.

and both filed answers. In their respective answers, both raised lack of service and/or inadequacy of service as an affirmative defense. Subsequently, the Suiters voluntarily dismissed their suit against the Heart Center.

{¶3} On July 1, 2011, Dr. Karimian filed a motion in which he asked the court to exclude from trial any request on the part of the Suiters for special damages related to their medical expenses. Alternatively, he asked the court to order the Suiters to join Medicare to the suit, as the real party in interest. Dr. Karimian argued that most, if not all, of the Suiters' medical expenses had been paid by Medicare. As such, he argued that the Suiters should not be permitted to seek out of pocket medical expenses that they had not actually paid themselves. The Suiters responded in opposition to the motion, and the court denied it. Dr. Karimian later renewed his motion, but the court once again denied it.

{¶4} On January 13, 2012, after receiving leave from the court, the Suiters filed an amended complaint. The amended complaint named Dr. Howard Shapiro and Summit Neurological Associates, Inc. ("Summit Neurological") as additional defendants.[2] The Suiters requested service of the amended complaint by Federal Express. In his answer to the amended complaint, Dr. Karimian once again raised lack of service and/or inadequacy of service as an affirmative defense.

{¶5} Rather than file an answer, Dr. Shapiro and Summit Neurological filed a motion to dismiss the amended complaint due, in part, to the expiration of the statute of limitations. The Suiters responded and argued that Mr. Suiter's stroke constituted a tolling event, as it had caused him to be of "unsound mind." Because the Suiters' response relied on an affidavit outside the

---

[2] The amended complaint also named Dr. Michael Passero and Northeast Ohio Pulmonary Critical Care & Sleep Associates, Inc. as additional defendants, but the Suiters later voluntarily dismissed them from the lawsuit.

pleadings, the trial court determined that the statute of limitations issue was one more properly suited to summary judgment. The court afforded Dr. Shapiro and Summit Neurological thirty days to file their motion for summary judgment. Before they did so, Dr. Shapiro and Summit Neurological filed an answer to the amended complaint. Their answer did not include defective service as an affirmative defense.

{¶6} Subsequently, the Suiters moved for summary judgment against Dr. Shapiro and Summit Neurological on the statute of limitations issue. Dr. Shapiro and Summit Neurological filed a cross-motion for summary judgment on the same issue, and the Suiters filed a brief in opposition. Likewise, Dr. Shapiro and Summit Neurological filed a brief in opposition to the Suiters' motion for summary judgment. The trial court determined that a genuine issue of material fact existed as to whether Mr. Suiter was of "unsound mind" at the time his cause of action against Dr. Shapiro and Summit Neurological accrued such that the statute of limitations would toll. Accordingly, the court denied the competing motions for summary judgment. The court concluded that the jury would decide whether Mr. Suiter was of unsound mind at the time his cause of action against Dr. Shapiro and Summit Neurological accrued.

{¶7} On January 17, 2013, after receiving leave from the court, the Suiters filed a second amended complaint for the purpose of naming Mr. Suiter's daughter as his representative.[3] Dr. Karimian once again answered the complaint and raised lack of service and/or inadequacy of service as an affirmative defense. Then, on May 14, 2013, Dr. Karimian filed a motion for judgment on the pleadings. Dr. Karimian argued that he was entitled to judgment on the pleadings because he was never properly served with the Suiters' complaint.

---

[3] The second amended complaint noted that Mr. Suiter's daughter was his attorney-in-fact, pursuant to a duly enacted power of attorney.

Because service by Federal Express was not an appropriate method of service at the time the Suiters served him with their complaint, Dr. Karimian argued that the court had never acquired personal jurisdiction over him. He further argued that he was entitled to a dismissal with prejudice because the Suiters had failed to commence their suit before the statute of limitations expired. The Suiters filed a brief in opposition to judgment on the pleadings, and Dr. Karimian filed a reply.

{¶8} On July 11, 2013, the trial court issued an order in response to Dr. Karimian's motion for judgment on the pleadings. The court acknowledged that the Suiters had failed to serve Dr. Karimian in compliance with the Civil Rules because, at the time the Suiters had served him, the Civil Rules did not recognize service by commercial carrier (e.g., Federal Express). Nevertheless, the court noted that the judges of the Summit County Court of Common Pleas had issued a standing order authorizing service of process by Federal Express. The court found that granting Dr. Karimian's motion "would not accomplish justice," given that the Suiters had relied upon the standing order of the court to accomplish service. Consequently, the court denied Dr. Karimian's motion, but ordered the Suiters to "serve [Dr. Karimian], forthwith."

{¶9} On August 1, 2014, Dr. Karimian filed a motion to dismiss for lack of personal jurisdiction, noting that the Suiters had made no attempt to serve him in accordance with the trial court's July 11, 2013 order. The Suiters responded in opposition and served Dr. Karimian with their second amended complaint by certified mail. After additional briefs in opposition and replies were filed, the trial court ruled on Dr. Karimian's motion to dismiss. The court determined that Dr. Karimian had properly preserved his defense regarding lack of service and that it was appropriate for the court to reconsider its previous decision on the service issue in light of *Hubiak v. Ohio Family Practice Ctr.*, 9th Dist. Summit No. 26949, 2014-Ohio-3116.

Because the Suiters had failed to commence their lawsuit against Dr. Karimian within one year of filing of their complaint, the court granted Dr. Karimian's motion to dismiss for lack of personal jurisdiction. The court dismissed the claims against Dr. Karimian with prejudice, as it found that the statute of limitations on those claims had expired.

{¶10} Mrs. Suiter, individually and as the executrix for her husband's estate, now appeals from the court's judgment and raises three assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING DISMISSAL WHEN [DR. KARIMIAN] WAIVED THE AFFIRMATIVE DEFENSE OF LACK OF PERSONAL JURISDICTION BY APPLICATION OF CIV.R. 12(G)-(H).

{¶11} In her first assignment of error, Mrs. Suiter argues that the court erred by granting Dr. Karimian's motion to dismiss because he failed to preserve lack of service as an affirmative defense. Specifically, she argues that he waived his lack of service defense when he failed to raise it in his first motion to dismiss. We do not agree that Dr. Karimian waived his defense.

{¶12} "Personal jurisdiction is a question of law that appellate courts review de novo." *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, ¶ 11. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Ross*, 9th Dist. Summit No. 26694, 2014-Ohio-2867, ¶ 33, quoting *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶13} "A challenge to the court's personal jurisdiction over a defendant must generally be raised either in his answer or by a motion filed before his answer." *Brislin v. Albert*, 9th Dist. Summit No. 27052, 2014-Ohio-3406, ¶ 6. *Accord Maryhew v. Yova*, 11 Ohio St.3d 154, 157 (1984). Civ.R. 12 provides that "[a] defense of lack of jurisdiction over the person * * * or

insufficiency of service of process is waived (a) if omitted from a motion in the circumstances described in [Civ.R. 12](G), or (b) if it is neither made by motion under this rule nor included in a responsive pleading * * *." Civ.R. 12(H)(1). *See also* Civ.R. 12(G) (providing for consolidation of all available Civ.R. 12 defenses in a single motion). If a party fails "to raise the defense of insufficiency of service of process in a responsive pleading or in certain motions before a responsive pleading[,] * * * then participation in the proceedings leads to waiver of proper service and the existence of personal jurisdiction over the party." (Internal citations omitted.) *Hubiak*, 2014-Ohio-3116, ¶ 14. "When the affirmative defense of insufficiency of service of process is properly raised and properly preserved, [however,] a party's active participation in the litigation of a case does not constitute waiver of that defense." *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, syllabus.

{¶14} Service of the Suiters' original complaint upon Dr. Karimian was perfected by Federal Express. In his answer to their complaint, Dr. Karimian specifically asserted as an affirmative defense that the Suiters "ha[d] failed to obtain appropriate jurisdiction due to lack of service, inadequacy of service and failure of appropriate service." Dr. Karimian raised the same affirmative defense in his answers to the Suiters' amended complaint and second amended complaint. Thus, Dr. Karimian chose to raise his defense by way of responsive pleading. *See Maryhew* at 157 ("[Civ.R. 12(B)] gives the pleader an option to assert the defense of lack of jurisdiction over the person either by way of a motion prior to any pleading or in the responsive pleading to the complaint.").

{¶15} Mrs. Suiter argues that Dr. Karimian waived his lack of service defense because he filed two motions to dismiss and the first did not contain an argument regarding insufficiency of service of process. *See* Civ.R. 12(H)(1)(a), citing Civ.R. 12(G). According to Mrs. Suiter, the

motion that Dr. Karimian filed on March 31, 2014, to renew his motion to exclude certain medical expenses at trial and/or to require the joinder of Medicare as the real party in interest actually constituted a motion to dismiss. *See* Civ.R. 12(B)(7) (defense of failure to join a party may be raised in a motion to dismiss). Even assuming that to be true, however, the record does not reflect that Dr. Karimian waived his defense.

{¶16} "The only way in which a party can voluntarily submit to a court's jurisdiction * * * is by failing to raise the defense of insufficiency of service of process in a responsive pleading or by filing certain motions *before any pleading*. Only when a party submits to jurisdiction in one of these manners will the submission constitute a waiver of the defense." (Emphasis added.) (Internal citations omitted.) *Gliozzo* at ¶ 13. Dr. Karimian did not file his renewed motion to exclude medical expenses at trial and/or require joinder until well *after* he filed his responsive pleading. Likewise, he did not file his later motion to dismiss until well after he filed his responsive pleading. Because Dr. Karimian filed his answer first, it was appropriate for the trial court to "look to [his] answer to determine whether the defense [of lack of proper service] was raised therein." *Hubiak*, 2014-Ohio-3116, at ¶ 15. In his answer, Dr. Karimian specifically asserted lack of personal jurisdiction due to insufficiency of service of process as an affirmative defense. Accordingly, the trial court did not err by concluding that he had preserved the defense. *See Gliozzo* at ¶ 12-13. *See also Maryhew*, 11 Ohio St.3d at 157; *Hubiak* at ¶ 14. Mrs. Suiter's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING DISMISSAL SINCE THE AMENDMENT TO CIV.R. 4.1, PERMITTING SERVICE OF PROCESS BY COMMERCIAL CARRIER, APPLIES RETROACTIVELY.

{**¶17**}  In her second assignment of error, Mrs. Suiter argues that the trial court erred by granting Dr. Karimian's motion to dismiss because the amendments to Civ.R. 4.1, permitting service of process by commercial carrier, apply retroactively.  We do not agree that the amendments to Civ.R. 4.1 apply retroactively in this matter.

{**¶18**}  "This Court applies a de novo standard of review when reviewing a trial court's decision on a motion to dismiss."  *Owens v. Haynes*, 9th Dist. Summit No. 27027, 2014-Ohio-1503, ¶ 11.  As previously noted, "[a] de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination."  *Ross*, 2014-Ohio-2867, at ¶ 33, quoting *Consilio*, 2006-Ohio-649, at ¶ 4.

{**¶19**}  The Suiters filed their complaint against Dr. Karimian and the Heart Center on May 27, 2010.[4]  There is no dispute that, at the time they filed their complaint, Civ.R. 4.1 did not provide for service of process by commercial carrier.  *See* Former Civ.R. 4.1(A).  The rule was later amended to include that form of service, but the amendments were not effective until July 1, 2012.  Accordingly, "[t]he manner in which [the Suiters'] complaint was served did not comply with Ohio's former civil rules.  It is no matter that there existed a standing order of the [Summit County Court of Common Pleas] designating employees of Federal Express as process servers."  *Hubiak*, 2014-Ohio-3116, at ¶ 11.  Because the Civil Rules did not allow for service of process by commercial carrier at the time the Suiters' attempted to serve Dr. Karimian, service "was not completed according to the dictates of Civ.R. 4.1."  *Id.*  *Accord Emerson Family Ltd. Partnership v. Emerson Tool, L.L.C.*, 9th Dist. Summit No. 26200, 2012-Ohio-5647, ¶ 32.

---

[4] We note that the record is devoid of any indication that the Suiters affirmatively selected to have their initial complaint served upon Dr. Karimian by Federal Express.  The Suiters did request, however, that their amended complaint be served upon Dr. Karimian by Federal Express.  The instruction for service of the Suiters' amended complaint specifically designated Federal Express as the chosen method for accomplishing service.

**{¶20}** Mrs. Suiter concedes that Former Civ.R. 4.1 did not permit service of process by commercial carrier, but argues that the amendments to the rule apply retroactively. She contends that this matter was pending against Dr. Karimian at the time those amendments went into effect. As such, she argues that service by Federal Express was proper.

**{¶21}** Civ.R. 86(II) addresses the effective date of the amendments to Civ.R. 4.1. The rule provides, in relevant part, that the amendments to Civ.R. 4.1

> govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies.

Civ.R. 86(II). For a civil case to have commenced, service must have been obtained upon a named defendant within one year of the filing of the complaint. Civ.R. 3(A). "[I]f service was not perfected within the one-year time frame of Civ.R. 3(A), then the action cannot be deemed commenced and was never pending." *Hubiak* at ¶ 26.

**{¶22}** As previously noted, the Suiters filed their complaint against Dr. Karimian and the Heart Center on May 27, 2010. They, therefore, had until May 28, 2011, to obtain service upon either named defendant. *See* Civ.R. 3(A). *See also Hubiak* at ¶ 36 ("The date of commencement of an action for Civ.R. 3(A) purposes is the date of filing so long as service is obtained within one year."). Because the Suiters failed to obtain service upon either Dr. Karimian or the Heart Center on or before that date, their action never "commenced" for purposes of Civ.R. 3(A). *See Hubiak* at ¶ 26. *See also Bentley v. Miller*, 9th Dist. Summit No. 25039, 2010-Ohio-2735, ¶ 10 ("If a plaintiff files a complaint and either never obtains service or obtains it after one year, the suit never 'commences' under Civ.R. 3(A)."). Mrs. Suiter is, therefore, incorrect in asserting that this matter was pending against Dr. Karimian when the amendments to Civ.R. 4.1 took effect.

**{¶23}** Both Dr. Karimian and the Heart Center raised lack of service and/or inadequacy of service as an affirmative defense when they filed their respective answers. Accordingly, the Suiters' lawsuit cannot be said to have commenced by virtue of either Dr. Karimian or the Heart Center having waived service of process. *See Hubiak* at ¶ 36 ("Where a waiver of service occurs, the date of service is the date of said waiver."). While the Suiters later joined additional defendants to the proceeding who waived service of process, their waiver did not occur until 2012. As such, the Suiters cannot rely upon their waiver of service to establish a commencement date within Civ.R. 3(A)'s one-year time limit. *Compare id.* at ¶ 37-39.

**{¶24}** The Suiters had one year from the date of the filing of their complaint to obtain proper service upon one of the defendants named therein and they failed to do so. *See* Civ.R. 3(A). Although courts should strive to hear cases on their merits whenever possible, "the Civil Rules are not just a technicality, and we may not ignore the plain language of a rule in order to assist a party who has failed to comply with a rule's specific requirements." *LaNeve v. Atlas Recycling, Inc.*, 119 Ohio St.3d 324, 2008-Ohio-3921, ¶ 23. The Ohio Supreme Court has recognized that "[a]n action may be dismissed when service of process has not been obtained after the passage of more than one year." *Maryhew v. Yova*, 11 Ohio St.3d 154, 157 (1984). Because the Suiters failed to serve Dr. Karimian in accordance with the then-existing version of the Civil Rules, the trial court did not err by dismissing their complaint. *See id.* at 157. As such, Mrs. Suiter's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN GRANTING DISMISSAL WITH PREJUDICE
SINCE THE STATUTE OF LIMITATIONS REMAINS TOLLED.

**{¶25}** In her third assignment of error, Mrs. Suiter argues that the trial court erred by dismissing the Suiters' lawsuit against Dr. Karimian with prejudice. She argues that the court

ought to have dismissed the case without prejudice because genuine issues of material fact remain as to the tolling of the statute of limitations. We agree that it was error for the court to dismiss the matter with prejudice on a motion to dismiss.

{¶26} "A complaint may be dismissed * * * for failing to comply with the applicable statute of limitations when the complaint on its face conclusively indicates that the action is time-barred." *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, ¶ 13. The court may not, however, "look at matters outside of the pleadings without converting [a] motion [to dismiss] into a motion for summary judgment." *Savoy v. Kramer*, 9th Dist. Summit No. 27418, 2015-Ohio-437, ¶ 9. A court commits reversible error when it relies upon evidence outside the pleadings to grant a motion to dismiss on the basis of the statute of limitations. *See id.* at ¶ 9-12. *Accord Wick v. Lorain Manor, Inc.*, 9th Dist. Lorain No. 12CA010324, 2014-Ohio-4329, ¶ 7-12.

{¶27} Absent some exception, "an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued." R.C. 2305.113(A). "[A] cause of action in a medical malpractice claim accrues and the statute of limitations commences to run upon the discovery by the patient, or the point when, in the exercise of reasonable care and diligence, the patient should have discovered, the resulting injury." *Zlocki v. Akron General Med. Ctr.*, 9th Dist. Summit No. 22887, 2006-Ohio-1173, ¶ 9. Under certain conditions, however, the statute of limitations may be tolled. If a person entitled to bring a medical malpractice action

> is, at the time the cause of action accrues, * * * of unsound mind, the person may bring it within the respective times limited [R.C. 2305.113], after the disability is removed. * * *

> After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent

jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought.

R.C. 2305.16. Thus, "the type of evidence necessary to show that a person was of unsound mind * * * differs depending upon whether it is claimed that [the person] was of unsound mind at the time the cause of action accrued or that [he] became of unsound mind after accrual of the cause of action." *Bradford v. Surgical & Med. Neurology Assoc., Inc.*, 95 Ohio App.3d 102, 106 (9th Dist.1994).

{¶28} In its judgment entry, the trial court noted that it had never determined the running or tolling of the statute of limitations with respect to the Suiters' claims against Dr. Karimian. It then determined, absent any analysis, that "[t]he medical negligence alleged against Dr. Karimian occurred prior to Mr. Suiter's debilitating stroke (i.e., Mr. Suiter's mind was rendered unsound after the cause of action accrued as alleged against Dr. Karimian)." Based on the foregoing conclusion, the court held that the statute of limitations would be tolled only if there was evidence that Mr. Suiter had either been adjudicated of unsound mind or confined in an institution or hospital. *See* R.C. 2305.16. Because "[t]he record [was] devoid of evidence that Mr. Suiter was adjudicated to have an unsound mind or that he was confined in an institution or hospital," the court concluded that the statute of limitations on the Suiters' claims against Dr. Karimian had expired.

{¶29} In analyzing when a claim for medical malpractice accrues, a trial court

must look to the facts of the particular case and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition.

*Zlocki*, 2006-Ohio-1173, at ¶ 10, quoting *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1 (1987), syllabus. "[A] patient's awareness of the 'extent and seriousness of his condition' must be ascertained by reference to a 'cognizable event.'" *Zlocki* at ¶ 11, quoting *Allenius v. Thomas*, 42 Ohio St.3d 131 (1989), syllabus. "It is enough that some noteworthy event, the 'cognizable event,' has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." *Allenius* at 134.

**{¶30}** Because this matter was before the trial court on a motion to dismiss, the court could not consider matters outside the pleadings. *See Savoy*, 2015-Ohio-437, at ¶ 9. The only way in which the court could dismiss the Suiters' complaint on the basis of the statute of limitations was if their complaint, on its face, conclusively established that the statute of limitations had expired. *See McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, at ¶ 13. As such, it is necessary to consider the allegations the Suiters raised in their complaint.

**{¶31}** In their initial complaint, the Suiters made the following allegations:

6. On or about December 15, 2008, [Mr.] Suiter suffered a disabling stroke that rendered him permanently disabled and incompetent in a continuous and unabated fashion from that date until the present.

7. Prior to that date, Mr[.] Suiter came under the care and treatment of [Dr. Karimian and the Heart Center].

8. [Dr. Karimian and the Heart Center] negligently failed to properly assess, test, diagnose, advise, treat and/or otherwise care for Mr[.] Suiter's atrial fibrillation.

9. As a direct and proximate cause of the negligent acts and/or omissions by [Dr. Karimian and the Heart Center], [Mr.] Suiter was deprived of appropriate treatment for this medical condition.

10. As a further direct and proximate result of [their] negligent care, [Mr.] Suiter sustained a massive stroke.

In the amended complaints they later filed, the Suiters also specifically alleged that, on or about December 15, 2008, Mr. Suiter became "of unsound mind and totally dependent on others, which condition persisted in a continuous and unabated fashion from that date until the present."

{¶32} For Mr. Suiter's medical malpractice claim to have accrued, he must have suffered a "cognizable event." *See Zlocki*, 2006-Ohio-1173, at ¶ 11, quoting *Allenius*, 42 Ohio St.3d 131 at syllabus. The trial court in its judgment entry failed to identify any cognizable event. It concluded, without analysis, that "[t]he medical negligence alleged against Dr. Karimian occurred prior to Mr. Suiter's debilitating stroke." It is entirely unclear from the face of the Suiters' complaint, however, whether Mr. Suiter suffered any cognizable event before his debilitating stroke. *See Wick*, 2014-Ohio-4329, at ¶ 22, quoting *Brown v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-815, 2013-Ohio-4012, ¶ 6 ("[I]n deciding whether to dismiss a complaint, * * * the trial court must presume all factual allegations in the complaint are true and construe the complaint in a light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff."). If Mr. Suiter's debilitating stroke constituted the cognizable event that would have alerted the Suiters to Dr. Karimian's improper treatment, then Mr. Suiter's cause of action for medical malpractice arose at the same time that he suffered his stroke, not before it.

{¶33} As previously noted, R.C. 2305.16 provides for the tolling of the statute of limitations in medical negligence actions when the injured party is of unsound mind. "[T]he type of evidence necessary to show that a person was of unsound mind * * * differs depending upon whether it is claimed that [the plaintiff] was of unsound mind at the time the cause of action accrued or that [he] became of unsound mind after accrual of the cause of action." *Bradford*, 95 Ohio App.3d at 106. The trial court determined that Mr. Suiter's medical negligence claim

accrued before he became of unsound mind, so it applied the portion of the statute applicable to those types of claims. *See* R.C. 2305.16 (requiring adjudication of unsound mind or institutionalization/hospitalization if cause of action accrues before plaintiff becomes of unsound mind). If Mr. Suiter's claim accrued at the same time his cause of action accrued, however, a different portion of the statute applied. Under that portion of the statute, the only issue was whether Mr. Suiter was of unsound mind at the time his cause of action accrued (i.e., at the time he suffered his debilitating stroke). The Suiters specifically alleged that Mr. Suiter's stroke rendered him permanently disabled and incompetent. They also later alleged that it rendered him "of unsound mind and totally dependent on others, which condition persisted in a continuous and unabated fashion from that date until the present."

**{¶34}** This Court takes no position on the ultimate issues of when Mr. Suiter's malpractice claim actually accrued or whether he was of unsound mind. Our sole focus is on the issue of whether the trial court properly ordered a dismissal with prejudice. On its face, the Suiters' complaint did not "conclusively indicate[] that [their] action [was] time-barred." *McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, at ¶ 13. To determine when Mr. Suiter's cause of action accrued and whether he was of unsound mind at that time, it would have been necessary for the court to look beyond the complaint. Because the matter was before the court strictly on a motion to dismiss, however, the court could not rely upon evidence outside the pleadings to grant Dr. Karimian's motion. *See Savoy*, 2015-Ohio-437, at ¶ 9-12; *Wick*, 2014-Ohio-4329, at ¶ 7-12. As such, the court erred by concluding that the Suiters' complaint was barred by the statute of limitations and by dismissing their complaint against Dr. Karimian with prejudice.

**{¶35}** It is not clear from the face of the Suiters' complaint whether their claims against Dr. Karimian are time-barred. Consequently, while the court properly dismissed their complaint due to their failure to properly serve Dr. Karimian, that dismissal should have been without prejudice rather than with prejudice. On remand, the court is instructed to dismiss the Suiters' claims against Dr. Karimian without prejudice. Mrs. Suiter's third assignment of error is sustained on that basis.

## III.

**{¶36}** Mrs. Suiter's third assignment of error is sustained. Her remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT


HENSAL, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

DAVID A. KULWICKI, Attorney at Law, for Appellants.

STEPHEN P. GRIFFIN and MICHAEL J. KAHLENBERG, Attorneys at Law, for Appellee.

DAVID M. BEST, Attorney at Law, for Appellee.